ALTENBERND, Judge.
The Department of Health and Rehabilitative Services appeals an order requiring it to disclose the names of P.A.G.’s adoptive parents to the child’s natural mother, M.G. The order was entered on a petition pursuant to section 63.162, Florida Statutes (1989). Although the mother intends to use the names in a pending habeas corpus proceeding, we conclude that the section 63.162 petition is a separate proceeding against HRS, and that the order is appealable as a final order. We reverse the order and remand for a new hearing because the order was entered prior to a full, evidentiary hearing to evaluate the factors described in section 63.162(l)(d)4, Florida Statutes (1989).
The facts, allegations, and accusations underlying this case are disputed but heartrending. The mother is an Israeli citizen of Arabic ancestry. The child was conceived in Israel, but was born prematurely in 1980 in Pinellas County after the young mother had come to the United States to study nursing. The child was born with permanent health problems. This is the mother’s only child. Because of complications associated with this delivery, the mother is unable to have another child.
In May 1980, while the child was still hospitalized for perinatal treatment and the mother was recuperating from her own illness, the child was adjudicated dependent and apparently separated from the mother. Eventually, the child was reunited with its natural parents in February 1981, and they traveled to Israel. In February 1983, the mother and child returned to Pinellas County. Almost immediately, the mother was incarcerated for alleged child abuse, and HRS again took custody of the child. The father then came to this country. The child was returned to the couple on March 4, 1983. On April 21, 1983, the father was arrested on charges of aggravated child abuse arising from a severe fracture of the child’s arm. It is disputed whether this fracture occurred before or after the child was returned to the parents by HRS on March 4, 1983, and whether the fracture might have resulted simply from the child’s poor health.
Shortly after the husband was released from jail with charges still pending, the couple went to Israel and left the child in the custody of HRS. HRS claims the couple left the country because of the pending criminal charges. The couple claim they left due to poor health. A few months later, the charges against the husband were dropped, but two arrest warrants remained outstanding concerning the mother.
In January 1984, HRS filed a petition for permanent commitment of the child pursuant to section 39.41, Florida Statutes (1983). Copies of the petition were sent to each parent in Israel by registered mail. Apparently, there is no written proof that the petitions were received. A hearing for the permanent commitment was scheduled for early April 1984. A few days prior to this hearing, the parents sent to HRS, through an international social service organization, a “declaration” prepared in Israel with some legal assistance. In the declaration, they requested custody of their *602 child. On April 9, 1984, the trial court entered a permanent commitment order. In June 1984, the mother apparently communicated with a lawyer at Gulfcoast Legal Services, Inc., who advised her that it was too late to appeal the order.
In June 1985, the child was adopted through an adoption proceeding filed in Pinellas County. Two months prior to the adoption, the child’s natural father had given a power of attorney to someone in Pinel-las County for the purpose of regaining custody of the child. From our record, it is unclear what, if anything, resulted from the power of attorney. Thereafter, years elapsed without any challenge to the judgment of adoption. See § 63.182, Fla.Stat. (1985).
The natural mother apparently decided that the only way for her to recover her child was to return to Florida. From 1986 to 1989, she tried many lawful and unlawful methods to enter this country. Ultimately, with great difficulty and personal sacrifice, she was successful. She is currently living in California subject to an order of deportation.
In February 1990, the natural mother retained a Florida attorney and petitioned the circuit court for a writ of habeas corpus against HRS and “the adoptive parents of P.A.G.” The adoptive parents, of course, are unknown to the natural parents and have never been served with the habe-as corpus petition. The petition against HRS was denied in October 1990, because HRS no longer had legal custody of the child. This order was not appealed.
As soon as the circuit court ruled that HRS was not the proper party for a habeas corpus proceeding, M.G. moved to unseal the records of the adoption proceeding in order to discover the names and addresses of the adoptive parents to initiate a habeas corpus proceeding against them.[1] Without conducting a significant evidentiary hearing and without obtaining current factual information about the child, the circuit court entered an order requiring HRS to reveal the names of the adoptive parents to the natural mother. HRS appeals this order, which the trial court stayed pending a review by this court.
Although the preceding description of the facts and allegations explains how the dispositive issue on appeal reached this court, we emphasize that this appeal is resolved more by the absence of evidence in this record than by the facts and allegations we have described. The history of this case clearly demonstrates the existence of complex legal issues that, on remand, may challenge the best legal minds. In light of the current posture of this case, however, we can avoid these issues today.
For many reasons, the records of adoption proceedings are subject to strict rules of confidentiality. The statute permitting disclosure states:
63.162 Hearings and records in adoption proceedings; confidential nature.—
[[Image here]]
(d) No person shall disclose from the records the name arid identity of a natural parent, an adoptive parent, or an adoptee unless:
1. The natural parent authorizes in writing the release of his name;
2. The adoptee, if 18 or more years of age, authorizes in writing the release of his name; or, if the adoptee is less than 18 years of age, written consent to disclose his name is obtained from an adoptive parent;
3. The adoptive parent authorizes in writing the release of his name; or
4. Upon order of the court for good cause shown. In determining whether good cause exists, the court shall give primary consideration to the best interests of the adoptee, but shall also give due consideration to the interests of the *603 adoptive and natural parents. Factors to be considered in determining whether good cause exists include, but are not limited to:
a. The reason the information is sought;
b. The existence of means available to obtain the sought-after information without disclosing the identity of the natural parents, such as by having the court, a person appointed by the court, the department, or the agency contact the natural parents and request specific information;
c. The desires, to the extent known, of the adoptee, the adoptive parents, and the natural parents;
d. The age, maturity, judgment, and expressed needs of the adoptee; and
e. The recommendation of the department or the agency which prepared the preliminary study, or the department if no such study was prepared, concerning the advisability of disclosure.
This case involves a disclosure pursuant to subsection (l)(d)4.
We conclude that the circuit court did not give primary consideration to the best interests of the adoptee because the court did not have sufficient information about the adoptee. On remand, it is entitled to receive such information from HRS and from other sources. The court is also authorized, as necessary and appropriate, to seal any information to protect the privacy interests of the child and the adoptive parents.
On remand, we encourage the circuit court to carefully consider the reason the information is sought and the existence of alternative methods to accomplish the desired result without disclosure. Sections 63.162(l)(d)4.a., ,162(l)(d)4.b., Fla.Stat. (1989). Unless the natural mother can establish at this late date a justiciable claim which would permit her to override the order of permanent commitment and the judgment of adoption, i.e., unless there is a legal obligation to issue a writ pursuant to section 79.01, Florida Statutes (1989), there may be no need to disclose the identity of the adoptive parents. Likewise, it is also possible that the proceeding could initially be brought against the adoptive parents in the names of John and Jane Doe, with continued confidentiality unless and until the natural mother prevailed on part or all of the merits.
We recognize that the challenge of protecting the legitimate interests of the natural mother, while also protecting those of the child and the family that cared enough to adopt this child, will not be an easy task for the circuit court. We do not intend to limit the creative options available to that court on remand. Thus, we merely hold that the order unsealing the adoption records was entered without adequate consideration of the factors contained in section 68.162, Florida Statutes (1989).
Reversed and remanded.
DANAHY, A.C.J., and FRANK, J., concur.

. We note that the petition to unseal the records was properly filed in Pinellas County Circuit Court, because that is the court which entered the judgment of adoption. Dixon v. Melton, 515 So.2d 1309 (Fla. 1st DCA 1987). From our record it is impossible to know the current location of the child. Thus, it is possible that Pinellas County would not be a proper forum in which ultimately to request a writ of habeas corpus. See Stein v. Stein, 537 So.2d 613 (Fla. 4th DCA 1988); Young v. Simmons, 506 So.2d 434 (Fla. 2d DCA 1987).