ALMON, Justice.
B.B.S., the petitioner, was convicted of sexual abuse in the first degree, a violation of Ala.Code 1975, § 13A-6-66. The alleged victim of the sexual abuse was his 10-year-old daughter, J.S. When J.S. testified at trial she denied that her father had touched her anywhere he should not have touched her or had done anything to her that bothered her. The district attorney then introduced hearsay evidence, citing as authority Ala.Code 1975, § 15-25-31, from persons who said that J.S. had recounted to them incidents of sexual contact by the petitioner. The petitioner later attempted to introduce testimony from two witnesses who would have testified that J.S. told them her father had not subjected her to the alleged sexual contact. The circuit court disallowed that evidence. The issue is whether the circuit court erred in disallowing this hearsay testimony that was offered to rebut the hearsay testimony by which the State proved its case-in-chief.
Sections 15-25-30 through -40 codify the “Child Physical and Sexual Abuse Victim Protection Act of 1989.” Section 15-25-31 reads:
“An out-of-court statement made by a child under twelve years of age at the time of the proceeding concerning an act that is a material element of any crime involving child sexual abuse, as defined in section 15-25-39 below, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of section 15-25-32 are met.”
Section 15-25-32 reads, in pertinent part:
“An out-of-court statement may be admitted as provided in section 15-25-31, if:
“(1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by section 15-25-2, or testifies by means of closed circuit television as is provided in section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements-”
The State called J.S., who was 10 years old at the time of trial, as its first witness. To the district attorney’s questions, “Has your daddy ever done anything to you that bothered you?” and “Has your daddy ever touched you anywhere that he shouldn’t touch you?,” J.S. answered “No.” When asked if she had told her teacher or others that her father had touched her where he should not, she testified that she did not remember. The State then called her teacher, who was allowed to testify, over objection, to statements made to her by J.S. These statements described the alleged sexual abuse. The State then introduced similar hearsay testimony through the principal of J.S.’s school, an employee of the Department of Human Resources, and an investigator with the district attorney’s office. The State also introduced the testimony of a doctor who had examined J.S.; the doctor testified that the condition of J.S.’s hymen was consistent with penetration.
*711 After the State rested its ease, the petitioner called to the stand L.S., who lived across the street from the residence where the petitioner allegedly abused J.S., and who apparently was J.S.’s great-aunt. The petitioner’s attorney asked L.S. about a conversation she had with J.S. about two weeks after the first allegations of sexual abuse were made. The trial court sustained the district attorney’s objection, whereupon the petitioner’s attorney made an offer of proof. He stated that L.S. would testify that J.S. had told her “that her father had not harmed or touched her anywhere in her private areas,” and “that a little boy at school had been messing with her and had been harassing her, and ... had attempted to take her clothes off in the bathroom and had, in fact, touched her in her private areas.” The attorney stated that the testimony was relevant to the petitioner’s defense and that it was being offered to impeach the state’s witnesses who had testified as to out-of-court statements by J.S. The attorney also stated that he was offering the evidence under § 15-25-32 “to rebut the out-of-court statements.”
The district attorney responded with the argument that § 15-25-31 allowed evidence only of “out-of-court statements that concern an act which is an element of sexual abuse.” Further, the district attorney objected on the basis that the petitioner had not given notice of his intent to offer this testimony. See § 15-25-35. The court agreed with the district attorney’s arguments:
“This out-of-court statement is not admissible under [§] 15-25-31 due to the fact that no notice was given pursuant to the Act, for one thing. And it does not concern an act that is a material element of this crime involving child sexual abuse, but appears to be concerning an act of sexual abuse of this child by someone else not a party to this lawsuit. So I don’t believe— it is my ruling it couldn’t be used to rebut these statements. The State didn’t have notice of it anyway. So it seems to me like that is what it is, it is also hearsay evidence to prove the truthfulness of another matter.”
The court also stated:
“Further, ... if it is for impeachment purposes, the defendant failed ... to ask specifically the witness when she was on the stand if she did make such a statement to [L.S.] with the proper predicate. Therefore, defendant would not be allowed to impeach the victim on that question since she did not deny it. In fact she did — her testimony was compatible "with that. But the specific question about telling [L.S.] — that was not even asked of her.”
Thus, the circuit court ruled that L.S.’s testimony was not admissible for three reasons: no notice was given pursuant to § 15-25-35; the testimony did not concern “an act that is a material element of’ the crime with which the petitioner was charged, but concerned “an act of sexual abuse of this child by someone else”; and the petitioner did not ask J.S. while she was on the stand if she had made such a statement to L.S. The petitioner’s attorney stated that he proposed to offer similar testimony from the petitioner’s mother; from the petitioner’s wife and J.S.’s mother; and from the petitioner himself. The circuit judge stated that he would similarly disallow such evidence from these witnesses.
None of the stated reasons supports the ruling to disallow the evidence. Section 15-25-35 is ambiguous as to whether a defendant must give notice to the district attorney so as to give the district attorney time to prepare a response to the statement:
“The proponent of the statement must inform the adverse party of the opponent’s intention to offer the statement and the content of the statement sufficiently in advance of the proceeding to provide the defendant with a fair opportunity to prepare a response to the statement before the proceeding at which is offered.”
(Emphasis added.) Although the first part of this section appears to place a burden of notice on both parties, the latter part of the section says only that the notice is provided to give the defendant “a fair opportunity to prepare a response.” This is probably an error in drafting caused by the fact that the ordinary situation contemplated by the Act is that the State will be offering hearsay evi *712 dence of inculpatory statements by the child alleged to be a victim.
Nevertheless, the statute is sufficiently ambiguous that a defendant could reasonably conclude that it requires notice only to the defense, not to the State. We hereby construe it to require notice to the State also, but such a construction should not be applied retroactively to bar evidence offered before the date of this opinion without prior notice to the State, at least in the absence of a showing of prejudice by the State. No showing of prejudice is made here. See Dilbeck v. State, 594 So.2d 168, 171-72 (Ala.Crim.App. 1991); Fortner v. State, 582 So.2d 581, 586 (Ala.Crim.App.1990), cert. denied, 582 So.2d 587 (Ala.1991); in both Dilbeck and Fortner, the Court of Criminal Appeals approved the admission of evidence on short notice to the defendant, relying in part on the absence of apparent prejudice. Here, the offered hearsay evidence consisted simply of statements by relatives of the child and the defendant. The impeachment of these witnesses on the basis of their bias or interest would have been a simple, direct matter, and their credibility would have been a matter for the jury to consider. No other need for time to prepare a response to the testimony is apparent, and the State did not suggest any such need. Moreover, the petitioner’s failure to give notice is somewhat excusable because the need to offer these statements arose only after the state had introduced similar hearsay statements through its witnesses. Therefore, the petitioner’s failure to give notice that he intended to offer testimony by L.S., his mother, his wife, and himself as to statements made by J.S. is not a sufficient ground for disallowing those statements.
Nor is the fact that the testimony did not concern “an act that is a material element” of the crime support the disallowance of the evidence. Such a construction of the Act would mean that the State could introduce inculpatory hearsay testimony, but that the defendant could not introduce exculpatory hearsay testimony. This is the principal error in the trial court’s ruling. As the defense attorney said during the colloquy regarding this evidence, “I think it violates the defendant’s right to fundamental fairness and due process for him to be denied the right to rebut hearsay with hearsay.” The proffered evidence that J.S. had said to L.S. and others that her father had not inappropriately touched her contradicted directly the State’s hearsay testimony that she said he had done so. At least negatively, it “eon-cern[ed] an act that is a material element” of the offense. Furthermore, the evidence that J.S. said a boy at school had touched her private areas .tended to refute the State’s evidence in two respects: one, it could explain the doctor’s evidence that the hymen could have been penetrated, and two, a jury could view it as explaining J.S.’s impulse to talk about sexual contact.
The State proved all the crucial aspects of its case with hearsay testimony. To construe § 15-25-31 as precluding the defendant from offering hearsay testimony in rebuttal simply because it did not “concern[ ] an act that is a material element” of the offense would be a serious violation of the defendant’s right not to “be deprived of life, liberty, or property, except by due process of law.” Const. 1901, Art. I, § 6. Any such construction of § 15-25-31 is expressly disapproved. If the State offers the testimony of a child prosecutrix or hearsay testimony regarding statements by the child, the defendant is entitled to use the mechanisms of the Child Sexual Abuse Victim Protection Act of 1989 to offer hearsay testimony regarding statements by the child tending to show that he did not commit the acts of which he is accused.
Finally, the fact that the petitioner’s attorney did not ask J.S. while she was on the witness stand if she had made such statements to L.S., her grandmother, her mother, or her father, does not support the later disallowance of their testimony. She testified on the stand that her father did not abuse her. The State then offered hearsay testimony through other witnesses that she had earlier stated otherwise. In presenting his defense, the petitioner attempted to offer evidence to impeach the State’s hearsay witnesses. This evidence was not introduced to impeach J.S.; rather, it was consistent with her testimony. While J.S. was on the witness stand, the State had not presented any evidence of the petitioner’s guilt, and he had *713 no reason to “cross-examine” her. It was only after the State’s other witnesses testified that the need to present the exculpatory hearsay testimony arose. Thus, to disallow the defense testimony because the petitioner did not, at the beginning of the trial and before the State had produced any evidence of guilt, “cross-examine” J.S. by asking her, “And did you also tell L.S. [or your grandmother, etc.] that he did not touch you in your private areas?”[1] is tantamount to requiring him to prove his innocence. A defendant accused of crime is presumed innocent until proven guilty. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).
All that is required by § 15-25-32 is that “at the time of such testimony [the child] is subject to cross-examination about the out-of-court statements.” This would appear to require an opportunity for the party against whom the hearsay testimony is offered to ask the child, “Did you make such a statement?” However, the State asked J.S. if she had told her teacher, the school principal, the worker from the Department of Human Resources, or the district attorney’s investigator that her father had touched her private areas. From this questioning and from the trial court’s disallowance of the petitioner’s evidence, it appears that the district attorney and the court construed the Act as requiring the proponent of the hearsay testimony to lay a predicate by asking the child if she had made the statement later to be offered as hearsay. Even if this is a correct interpretation of the Act or an advisable practice for applying it, it does not support the ruling in this ease. After J.S.’s direct testimony, there was no risk of conviction if the petitioner failed to introduce any evidence. The trial court effectively held that, in cross-examining J.S., the petitioner had to anticipate that the State would later introduce inculpatory evidence and had to lay a predicate for his subsequent rebuttal of that evidence. When J.S. finished her testimony, the petitioner could have rested on the presumption of innocence and, if the prosecution had offered no further evidence, he would have been entitled to a judgment of acquittal. Thus, to require him to “lay a predicate” at that early stage would have denied him the presumption of innocence.
For the foregoing reasons, none of the grounds argued by the district attorney and accepted by the circuit court supports the disallowance of the evidence offered by the petitioner.
We note one other aspect of the Act that arguably supports the court’s ruling. Section 15-25-32(2)b makes a child’s out-of-court statement admissible under § 15-25-31 if “The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.” As codified, this provision appears to apply only when the child is unavailable to testify. See § 15-25-32(2)a. This codification does not correspond precisely to the legislative act, because the “trustworthiness” provision of (2)b. was enacted as § 3(c) of the Act. Ala. Acts 1989, No. 89-876. Section 3(a) of the Act was codified as § 15-25-32(1) (“The child testifies at the proceeding ... ”), and § 3(b)(1) was codified as § 15-25-32(2)a. (“The child is ... unavailable to testify ... ”). In the Act, the “trustworthiness” requirement appears to apply to a hearsay statement, whether the child is available to testify or not:
“Section 3. An out-of-court statement may be admitted as provided in Section 2, if:
“(a) The child testifies at the proceeding, or testifies by means of video tape deposition ..., or testifies by means of closed circuit television ..., and at the time of such testimony is subject to cross-examination about the out-of-court statements; or
“(b)(1) The child is found by the court to be unavailable to testify on any of these grounds:
[[Image here]]
“(vi) substantial likelihood that the child would suffer severe emotional trauma from *714 testifying at the proceeding or by means of closed circuit television; and
“(c) The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.”
(Emphasis added.)
This confusion is heightened by § 7 of the Act as adopted by the legislature, which refers to the “particularized guarantees of trustworthiness under Section 3(b)(2).” There is no § 3(b)(2) in the Act, and this reference can apply only to § 3(e). Section 15-25-37 codifies § 7 and refers to the “particularized guarantees of trustworthiness under section 15-25-32(2)b.” Thus, to correct the reference in § 7, the Code commissioner effectively made § 3(e) into § 3(b)(2), i.e., instead of § 15-25-32(3), the provision became § 15-25-32(2)b. This choice is understandable, especially since the legislature enacted a § 3(b)(1) with no § 3(b)(2).
This change was not mentioned in the act “adopting and incorporating” the Michie Company’s 1989 cumulative supplement “into the Code.” Ala. Acts 1989, No. 89-990. Even if Act No. 89-990 had mentioned this change, it could not have worked a substantive change in the law, because Act No. 89-990 is not an act adopting a code, digest, or revision of statutes and therefore could not contain more than one subject. Const.1901, Art. IV, § 45; Ex parte Coker, 575 So.2d 43 (Ala.1990). Thus, Act No. 89-876 governs rather than the codification.
The question remains whether § 3 or § 7 of the Act should be corrected. The error exists in the earliest printed version of the bill that became Act No. 89-876, so the legislative history provides no guidance. See House Journal of Alabama, Regular Session 1989, p. 1475. A clue to the answer is to be found in Idaho v. Wright, 497 U.S. 805, 814-15, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638, 651-52 (1990):
“[T]he Confrontation Clause [U.S. Const, amend. 6] ‘operates in two separate ways to restrict the range of admissible hearsay.’ ... ‘First, in conformance with the Framers’ preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce or demonstrate the unavailability of, the de-clarant whose statement it wishes to use against the defendant.’ ... Second, once a witness is shown to be unavailable, ‘his statement is admissible only if it bears adequate “indicia of reliability.” Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.’”
(Emphasis added; quoting Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S.Ct. 2531, 2538-39, 65 L.Ed.2d 597, 607-08 (1980)); see Fortner v. State, supra, 582 So.2d at 583-85, which applied this holding to § 15-25-32, in a case where the child testified at trial. See, also, White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), in which the Court held that the prosecution did not have to show the unavailability of a declarant who did not testify, where the hearsay statement was admitted under an exception to the hearsay rule that provided indicia of reliability.
It thus appears that the legislature was attempting to follow the Ohio v. Roberts formulation. Ohio v. Roberts and Idaho v. Wright appear to require “indicia of reliability” only where the declarant is unavailable to testify. However, in both cases the declar-ant was unavailable, and it may be that the Court was assuming that if the declarant is available, the evidence will be offered directly through the declarant and not as hearsay.
Although the question is not without difficulty, we think the Confrontation Clause, U.S. Const, amend. VI, requires that hearsay testimony should not be admitted without indicia of reliability, even if the declarant testifies.[2] The hearsay allowed under the *715 Act is not allowed because it has an inherent trustworthiness, but because of the difficulties presented by testimony of children of tender years. Without the “trustworthiness” requirement, the Act, if it were construed as codified, would allow rampant hearsay of dubious probative value simply because the child has testified. Thus, we hold that the “trustworthiness” requirement applies to hearsay statements whether the child testifies or not; that is, it should have been codified as § 15-25-32(3), corresponding to the way the legislature enacted the provision.
The parties did not join issue on whether the evidence offered “possess[ed] particularized guarantees of trustworthiness,” and the court did not rule on that basis. Significantly, when the State offered its hearsay evidence, the defense objected on that basis. The district attorney responded with the argument that trustworthiness need not be shown if the child testifies. The court was “inclined to agree” with this proposition, but nevertheless specifically considered the factors set out in § 15-25-37 and found that the statements possessed those particularized guarantees of trustworthiness. The court then overruled B.B.S.’s objection. No such finding was made in regard to the statements offered by B.B.S., so the disallowance of his evidence cannot be sustained on this ground. Of course, the Confrontation Clause does not affect hearsay offered by the defendant, but, as we have said above, the only portion of the Act that purports to ensure the reliability of the hearsay evidence that it allows is the “trustworthiness” requirement. Thus, that requirement should apply when the defendant offers hearsay as well as when the State offers it.
For the foregoing reasons, the judgment must be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, INGRAM and COOK, JJ, concur.

. Actually, the petitioner’s attorney did ask J.S. if she remembered talking to her grandmother or L.S. about “a little boy at school that had been bothering you.” She testified that she did not remember.

. We do not view White v. Illinois, supra, as inconsistent with this view. That case holds that where the hearsay is admitted under recognized exceptions pertaining to the reliability of the out-of-court statement (there, the spontaneous utter-anee and the medical examination exceptions), the availability of the declarant to testify is irrelevant. Here, the hearsay comes under a new statutory exception that has no relation to the reliability of the statement except for the "trust *715 worthiness” provision. Cf. Hudgins v. State, 615 So.2d 1297 (Ala.Crim.App. 1993).