BURKE, Judge.
D.L.R. appeals his conviction for sexual abuse of a child less than 12 years old, see § 13A-6-69.1, Ala.Code 1975.[1] D.L.R. was sentenced to 15 years in prison and was fined $3,500. D.L.R, was also ordered to .pay court costs and to pay $150 to the Alabama Crime . Victims Compensation Fund.

Facts

This case was tried in May 2014. At trial, the State’s. evidence indicated the following. At the time of trial, the victim, K.R., whose birthday is September 11, was seven years old. D.L.R. is K.R.’s biological father. At the time of trial, D.L.R. was 29 years old. Initially, K.R. testified that D.L.R. “did bad stuff to [her].” (R. 11.) However, K.R. testified that she could not state what her father had done and that she did not want to talk about it. K.R. further testified that nobody told her that her father had done bad stuff to her; however, K.R. testified that her paternal grandmother told her that her father had not done anything bad to her.
Allison Mills, who was employed as a teacher at Dimples Daycare facility, testified that in November 2010, K.R. was a four-year-old student in Mills’s class. On November 10,2010, KR.’s mother and maternal grandmother informed Mills that K.R. wanted to tell Mills something. According to Mills, K.R. told her that her father had hurt her. Specifically, K.R. stated that her father “put his butt on her face.” (R. 49.) K.R. also stated that she wanted to draw a picture for Mills. Mills further testified:
“So, we got out a piece of paper and her pencil and she started drawing pictures. The pictures that she drew looked to be a man’s penis that she had drawn. She also drew what looked to me to be a butt. Then, she drew a circle and explained to me what these pictures were.
*723 “She said that — she would point to what looked like the man’s penis, and she would say, ‘My Bubba has one of these just like my daddy. My daddy and my Bubba have one, but little girls, we don’t have this,’
“And I said, ‘That is right.’ She said, ‘My daddy would take his and put it in my mouth,’ and' she would point to the circle, saying that was her mouth. Then, she also pointed to the picture of the butt and she said that he put that on her face.”
(R. 49-50.) The drawings were admitted into evidence. Mills testified that K.R. told her that the drawing that looked like a penis was “her daddy’s private parts.” (R. 58.)
After Mills testified, K.R. was again called to testify. On direct examination, K.R. stated that she did not remember making the statements to Mills concerning the alleged abuse by her father and that she did not remember drawing the pictures that were admitted into evidence during Mills’s testimony. K.R. also stated that she did not remember whether her father “put his private part in [her] mouth.” (R. 60.) K.R. further testified that she did not remember whether her father “put his butt on her head.” (R. 61.) Also, K.R. was asked what she remembered about her father, and she responded: “Nothing.” (R. 61.) However, when the prosecutor asked K.R., “Did your daddy do what Mrs. Allison said you told her?,” K.R. responded, “Yes.” (R. 60.)
On cross-examination, K.R. again stated that she did not remember drawing the pictures for Mills and that she did not remember talking to Mills about the alleged abuse. K.R. also stated that she did not remember talking to her mother or maternal grandmother about the alleged abuse. When asked whether her father “ever hurt her,” K.R. nodded. . (R. 63.) However, when asked to state what her father did to hurt her, K.R. responded that she did not know and that she did not remember. K.R. also indicated that she talked to her maternal grandmother about testifying and that her grandmother told her to say that D.L.R. hurt her.
On redirect examination, the following exchange occurred:
“[Prosecutor]: What did your Maw-Maw [maternal grandmother] tell you, [K.R.]?
“[K.R.]: She just told me that I had to say what he did.
“[Prosecutor]: She told you that you had to say what he did?
“[K.R.]: I don’t remember.
“[Prosecutor]: Okay. Did she tell you — did Maw-Maw tell you what he did?
“[K.R.]: No.
“[Prosecutor]: Okay. Did she tell you some things that you should say that .he did? Like, did she tell you to say that he did this? -
“[K.R.]: No.
“[Prosecutor]: But she told you to say what he did?
“[K.R.]: (Witness nods.)”
(R. 64.)
On re-cross-examination, defense counsel asked:- “Did your Maw-Maw tell you that you had to say that your dad hurted you?” K.R. responded: “Yes.” (R. 64-65.)
On further redirect examination, the following exchange occurred: ■
“[Prosecutor]: Did' she tell you why you had to say that your dad hurted you?
“[K.R.]: No,
“[Prosecutor]: And she didn’t tell you what to say about it?
*724 “[K.R.]: (Witness nods.)”
(R. 65.)
M.S., K.R.’s maternal grandmother, had custody of K.R. at the time of trial; K.R. has lived with M.S. since November 10, 2010. M.S. testified that, on November 9, 2010, she picked up K.R. and her little brother from the day-care facility. On that occasion, K.R. was upset and told M.S. that “daddy hurted me.” (R. 72.) On November 10, 2010, M.S. took K.R. to the day-care facility and informed K.R.’s teacher that K.R. was upset. Shortly after leaving K.R. at the day-care facility, M.S. picked up K.R.’s mother, and they went to the Department of Human Resources (“DHR”). M.S. testified that, for five or six months after K.R. started living at M.S.’s house,
“[K.R.] was distraught. She cried a lot. We spent most of our nights in a recliner because she constantly cried because she kept telling me how daddy hurted her. I told her, T don’t know why.’ You know, I don’t have the answers, so we would sit in the rocking chair every night and we rocked and we rocked. That is — that went on for a long, long time.”
(R. 75.) M.S. further testified that, after that five- or six-month period, K.R. stated on one occasion: “My daddy carried me to Wal-Mart and he carried me to the Dream Park and he said that he’d never do it again.” (R. 76.) According to M.S., other than that statement, she never discussed the alleged abuse with K.R. again.
Melissa Robbins testified that in 2010 she owned Dimples Daycare. On November 10, 2010, K.R. told Robbins that D.L.R. “put his private part on [KR.’s] face and that he had put his butt on her face.” (R. 94-95.) Robbins also testified concerning the pictures K.R. had drawn for Mills. According to Robbins, K.R. stated that she had drawn her father’s “butt” and his “private parts” in those pictures. Robbins further testified that K.R. drew another picture in Robbins’s office. That picture was also admitted into evidence. According to Robbins, K.R. stated that that picture was her father’s “private parts” and “his butt that he put on her.” (R. 99.) Immediately after Robbins had this conversation with K.R., Robbins telephoned DHR. On cross-examination, Robbins testified that K.R. told her that D.L.R. put his private parts on KR.’s face and in her mouth and that “he spread his butt cheeks apart and put them on her face.” (R. 103.)
Howard West, an investigator for. the Covington County Sheriffs Department, testified that he interviewed K.R. concerning the abuse allegations and that she drew some pictures in his office. A recording of the interview was played for the jury. According to Investigator West, K.R. stated that one of the drawings was her father’s “nasty thing” and that another drawing was her father’s “butt.” (R. 118.) K.R. told Investigator West that her father hurt her.
K.R.’s mother, A.R., testified that on November 9, 2010, while KR. was in the front room of their house, K.R. drew a picture in a notebook and then showed the picture to A.R. A.R. asked K.R. what she had drawn. K.R. responded that it was bad, but she would not discuss it. A.R. contacted her mother, and they decided that they would contact DHR the next day. According to A.R., shortly after this incident, K.R. stated that her father had hurt her. A.R. also testified that K.R. calls a man’s private parts either “bad” or “nasty.” (R. 178.)
Beth Maddox, a social worker employed by DHR, investigated the DHR case involving K.R. Maddox interviewed K.R. and her parents and observed a forensic interview of K.R. A recording of the forensic interview was played for the jury. Mad *725 dox testified that, in her opinion, K.R. had been sexually abused.
Karen Sullins testified that she had been a counselor for kids and adolescents for about six years. Sullins has a master’s degree in counseling, and she is certified in dealing with children who are victims of trauma. Sullins testified that she has counseled approximately 300 or 400 children in situations involving sexual abuse. Sullins had previously testified in cases concerning child sexual abuse and the trauma that results from child sexual abuse, and she had previously been qualified as an expert in the field of child sexual abuse. Sullins did not counsel K.R.; however, Sullins testified as follows concerning why some children forget episodes of sexual abuse:
“The Court:.... Can you give us your opinion as to why some children forget an episode of sexual abuse?
“Mrs. Sullins: Yes. Some children may forget an episode of sexual abuse if there is a length of time period between the initial time that they report or it was discovered. Age, of course. Developmental level. Sometime a child is very young to sometimes they are older. Development is one issue. Another reason could be that — that the means that the child has gotten comfortable with coping with it. This information is stored, that initially it could be brought out and brought to light that after a certain amount of time — it may be like, kind of describe it as a time frame in a little computer modem. The information that may be hurtful, harmful, and very emotionally charged, they can put it away for a long period of time. Typically, what I have seen in some cases is that memory of the details of what happened sometimes may latent for years [sic].”
(R. 275-76.)
After Sullins testified, K.R. was called to testify again. K.R. testified that she did not remember making the statements to her maternal grandmother or to Robbins concerning the alleged abuse by her father. K.R. further testified that she did not remember talking to Investigator West, to Maddox, or to anybody else about the alleged abuse by her father. Finally, K.R. testified that she did not remember drawing any of the pictures concerning the alleged abuse.
At the close of the State’s evidence and at the close of all the evidence, D.L.R. moved for a judgment of acquittal. The trial court denied those motions.

Discussion

I.
On appeal, D.L.R. first argues that KR.’s out-of-court statements should not have been allowed into evidence because, he says, the admission of that evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution, which states that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.”
Section 15-25-31, Ala.Code 1975, provides:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-39(3), Ala.Code 1975, defines a “child physical offense, sexual offense, and exploitation” to include “sexual abuse in any degree” when the victim is *726 under 12 years of age.' Section 15-25-32, Ala.Code 1975, provides, in relevant part:
“An out-of-court statement may be admitted as provided in Section 15-25-31, if: ' ,
“(1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by Section 15-25-2, or testifies by means of closed circuit television as is provided in Section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements.”
Section 15-25-32(1), Ala.Code 1975, conforms with the Confrontation Clause of the Sixth Amendment to the United States Constitution because the Confrontation Clause does not place any limits on the admission of hearsay statements when the declarant testifies at trial. As the United States Supreme Court noted in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004):
“Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See California v. Green, 399 U.S. 149, 162 (1970). It is therefore irrelevant that the reliability of some out-of-court statements ‘“cannot be replicated, even if the de-clarant testifies to the' same matters in court.” ’ Post, at 1377 (quoting United States v. Inadi, 475 U.S. 387, 395 (1986)). The Clause does not bar admission of a statement so long as the declar-ant is present at trial to defend or ex-plaim it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of-the matter asserted. See Tennessee v. Street, 471 U.S. 409, 414 (1985).)”
541 U.S. at 59 n. 9.
K.R. testified at trial. Therefore, neither the Confrontation Clause of the Sixth Amendment nor § 15-25-32(1) barred the admission of her out-of-court statements. Furthermore, Crawford, which addressed “[tjestimonial statements of witnesses absent from trial,” 541 U.S. at 59, was not implicated.
D.L.R. further argues that K.R. was not actually subject to cross-examination because she testified that she could not remember her out-of-court statements. However, this argument concerns the effectiveness of the' cross-examination, not the opportunity to cross-examine. This Court has recognized:
“““The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.’ ” [Davis v. Alaska, 415 U.S. 308, 315-16 (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed.1940) (emphasis in original)). Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in Whatever way, and to -whatever extent, the defense might wish.’ ”
King v. State, 929 So.2d 1032, 1037 (Ala.Crim.App.2005) (quoting Delaware v. Fensterer, 474 U.S. 15, 19-20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985)).
K.R. personally appeared in court and was subjected to direct questions from defense counsel. No limits or restrictions were placed on defense counsel’s ability to question K.R. as to her out-of-court statements.’'Although K.R.’s answers to-'defense counsel’s questions might have been unsatisfactory to him, K.R. did not refuse to answer his questions. The fact that KR. testified that she could not remember *727 her out-of-court statements does not mean that defense counsel did not have the opportunity to cross-examine her or that she was not “subject to cross-examination.” Therefore, the trial court did not violate the Confrontation Clause of the Sixth Amendment or § 15-25-32(1), Ala.Code 1975, by allowing K.R,’s out-of-court statements into evidence.[2]
II.
Next, D.L.R. alleges that’“§ 15-25-31 et seq., AUuCode 1975, is in direct conflict with prevailing United States Supreme Court cases and should be held unconstitutional and otherwise not applicable in the prosecution of [D.L.R.].” (D.L.R.’s brief, at 25.) However, D.L.R. raises this issue for the first time on appeal, and he offers no argument in support of this allegation. “It is well settled that issues raised for the first time on appeal are not preserved for appellate review.” Hinkle v. State, 67 So.3d 161, 168 (Ala.Crim.App.2010). Furthermore, Rule 28(a)(10), Ala. R.App. P., requires that the appellant’s brief contain “[a]n argument containing the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” “Failure . to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented.” C.B.D. v. State, 90 So.3d 227, 239 (Ala.Crim.App.2011). Therefore, this issue is not properly before us for review.
III.
Next, D.L.R. argues that the trial court erred in denying his -motion for a judgment of acquittal. Specifically, D.L.R. argues that the State presented insufficient evidence to support his conviction because, he says, there was no evidence indicating that he had subjected K.R. to sexual contact. More specifically, D.L.R, argues:
“In the instant case, there is not one single instance when the child states that [D.L.R.] touched her sexual or other intimate parts. By-the clear meaning of the statute, the child’s sexual parts must have been touched.”
(D.L.R.’s brief, at 28.)
Under § 13A-6-69.1,Ala.Code 1975, “[a] person commits'the crime of sexual abuse of a child less than 12 years old if he or she, being 16 years old or older,- subjects another person who is less than 12 years old to sexual contact.” Under § 13A-6-60(3), Ala.Code 1975, “sexual contact” is defined as “[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the séxual desire of either party.” -
This Court has previously rejected the same argument D.L.R. now makes:
“As stated above, Ray argues that an individual can be convicted of sexual *728 abuse in the first degree only if ‘the intimate or private parts of the -victim’ are subjected to sexual contact. He asserts that because the victim touched him there was no , commission of the crime of sexual abuse in the first degree as defined in § 13A-6-66, Ala.Code 1975.
“Section 13A-6-66(a), Ala.Code 1975, states that a person is guilty of sexual abuse in the first degree if: ‘[h]e subjects another person to sexual contact by forcible compulsion.’ ‘Although penal statutes are to be strictly construed, courts are not required to abandon common sense.’ Musgrove v. State, 519 So.2d 565, 582 (Ala.Crim.App.1986). We have not construed this statute as narrowly as Ray urges us to do. As we stated in Holley v. State, 671 So.2d 131, 133 (Ala.Crim.App.1995): ‘The state also presented evidence that the appellant rubbed J.H.’s vagina with his finger and made J.H. touch his penis. Either of these acts were sufficient to show that the appellant committed sexual abuse in the first degree.’ See also Gunter v. State, 665 So.2d 1008, 1013 (Ala.Crim.App.1995) (‘Under the definition of “sexual contact,” “any touching of the sexual or other intimate parts” should be construed literally to mean any touching, whether directly or using an inanimate object.’).
“M.M, testified that Ray made her put lotion on his ‘private parts’ on two occasions. ‘[T]he victim’s testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse.’ Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996). It was Ray’s actions alone that caused M.M. to touch his ‘private parts.’ Therefore, the circuit court committed no error in denying Ray’s motion for a judgment of acquittal. See Holley.”
Ray v. State, 52 So.3d 547, 552-53 (Ala.Crim.App.2007), rev’d on other grounds, 52 So.3d 555 (Ala.2009).
To convict D.L.R. of sexual abuse of a child less than 12 years old, the State was required to present evidence indicating that D.L.R. “subjected]” K.R. to “sexual contact.” See § 13A-6-69.1, Ala.Code 1975. Thus, the State was required to present evidence indicating that D.L.R. subjected K.R. to “[ajny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.” See § 13A-6-60(3), Ala. Code 1975. In the present case, the State did, in fact, present evidence indicating that D.L.R. subjected K.R. to the touching of the sexual or other intimate parts of a person. Specifically, D.L.R. subjected K.R. to the touching of his sexual or other intimate parts.
The “actor” in § 13A-6-60(3), Ala.Code 1975, is the person who committed the act of “subject[ing]” under § 13A-6-69.1, AIa.Code 1975. However, contrary to the argument D.L.R. is apparently attempting to make, the person who committed the act of “subjecting]” under § 13A-6-69.1 does not have to be the person who “touch[ed] the sexual or other intimate parts of a person” under § 13A-6-60(3). The defendantyactor has to be the person who “subjects” the victim to “sexual contact,” but nothing requires that the “touching” be done by the defendant. Instead, “[ajny touching of the sexual or other intimate parts of a person” will suffice so long as that touching is caused by the defendant and so long as the person touched is not married to the defendant. In other words, the actus reus is “subjecting,” i.e., causing another person to submit to “sexual contact,” and an element of “sexual contact” is “[a]ny touching of the *729 sexual or other intimate parts of a person .... ”
Furthermore, the phrase “not married to the actor” is merely an exception to the touching requirement, and that exception does not in any way require that the accused touch the sexual or other intimate parts of the victim. It is clear that the intent of the legislature was to exclude people who are married to each other from criminal culpability under § 13A-6-60(3). However, to read the phrase “not married to the actor” as excluding conduct where a victim is forced to touch the actor’s sexual or other intimate parts from the operation of the statute is to misapply its plain language. This phrase was not meant to exclude the touching of the- actor’s, i.e., the defendant’s, sexual or other intimate parts. In the present situation, D.L.R., the actor, is clearly not married to himself or to the victim; thus, the requirement that the sexual or other intimate parts touched belong to “a person not married to the actor” is met, and the phrase “not married to the actor” can otherwise be ignored when construing the statute in the present situation.
In the present case, the State presented evidence indicating that D.L.R. put his penis in KR.’s mouth and on her face and that D.L.R. put his “butt” on K.R.’s face. As was the case in Ray, D.L.R.’s actions alone caused K.R. to touch his sexual or other intimate parts. In other words, D.L.R. “subject[ed]” K.R. to the touching of his sexual or other intimate parts. Further, as explained above, the sexual or other intimate parts that D.L.R. subjected K.R. to touching belonged to “a person not married to the actor,” i.e., they belonged to D.L.R. Therefore, based on a strict, narrow reading of the applicable statutes, the trial court did not err in denying D.L.R.’s motion for a judgment of acquittal.
IV,
Finally, D.L.R. argues that “the trial court erred by allowing counselor, Karen Sullins, to testify at trial as an expert witness.” (D.L.R.’s brief, at 29.) Specifically, D.L.R. argues that the State did not give pretrial notice of its intent to call Sullins as an expert witness and that Sul-lins “failed to testify that she possessed any specialized ‘knowledge, skill, experience, training or education’ which would support her qualifications as an expert” under Rule 702, Ala. R. Evid. (D.L.R.’s brief, at 32.) However, D.L.R. raises this argument for the- first time on appeal.
Before the trial court, the only objection concerning Sullins’s testimony raised by defense counsel and ruled on by the court was based on relevance. When Sullins was called to testify, the following exchange occurred:
“The Court: All right. [Defense counsel], you may have been joking, but do you want to stand on your objection?
“[Defense counsel]: Yes, sir, just in terms of relevance. I just hate for us to — it is like we are spending more time in terms of trying to figure out the admissibility than have her come, but I think that it is not relevant and we would like to preserve that for the record.
[[Image here]]
“[Defense counsel]: I think that there is also an argument of relevance whether what [the prosecutor] proffered that the expert would say is relevant in this case.
“The Court: I overrule the relevance objection.”
(R. 268-69.)
During Sullins’s testimony, the prosecutor asked: “Now, Mrs. Sullins, can you tell the jury, based on your training and your experience, why children do not remember *730 being sexually abused?” (R. 272.) Immediately after that question, defense counsel stated: “Object, Judge.- She has. never met [K.R.]. This is irrelevant. She has never had that opportunity to — “ Id. Then, after some questioning of Sullins by the trial court, the court ruled: “I will allow, Rephrase your question.” (R. 274.)
As stated earlier, “[i]t is well set-tied that issues raised for the first time on appeal are not preserved for appellate review.” Hinkle, 67 So.3d at 168. “ ‘To preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained.’” Cochran v. State, 111 So.3d 148, 153-54 (Ala.Crim.App.2012) (quoting Mitchell v. State, 913 So.2d 501, 505 (Ala.Crim.App.2005)). “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).
Before the trial court, D.L.R. did not raise the specific arguments concerning Sullins’s testimony he now raises on appeal. Therefore, those arguments are not preserved for our review. ■

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, J„ concur.
KELLUM and JOINER-, JJ., concur in the result.

. D.L.R. was also charged with first-degree sodomy; the jury found him not guilty with respect to that charge.

. We note that, with little discussion, D.L.R. cites Ex parte B.B.S., 647 So.2d 709 (Ala.1994), and its progeny, Ex parte R.D.W., 773 So.2d 426 (Ala.2000), in support of his argument. Ex parte B.B.S. states that the Confrontation Clause requires that hearsay testimony regarding statements of a child sexual-abuse victim should not be admitted without an indicia of reliability, even if the child testifies, 647 So.2d at 714, However, this Court has previously recognized that, in Crawford, the United States Supreme Court "abrogated the unavailability/reliability analysis of Ohio v. Roberts [, 448 U.S. 56 (1980),] upon which the Alabama Supreme Court relied in Ex parte B.B.S.," and, thus, "[rjeliability of an out-of-court statement is no longer a factor to be considered in conducting a Confrontation Clause analysis.” L.J.K. v. State, 942 So.2d 854, 873 (Ala.Crim.App.2005).