Earnestine Bryant Brooks was indicted for murder of her live-in boyfriend, Benny Harris, Jr. The jury convicted her of manslaughter and she was sentenced to ten years' imprisonment. She appeals, setting forth three contentions.
A brief review of the facts reveals the following: It appears that the decedent, Mr. Benny Harris, Jr., who lived with the appellant, Earnestine Bryant Brooks, spent most of July 5, 1983, drinking. Earlier that day he had had a tussle with appellant at her cousin's house and he later tried to get back into the apartment they shared. Appellant put the deceased out the door. Mr. Harris tried to re-enter the apartment but was not allowed back inside. Mr. Harris then broke the outer pane of the storm window with his fist and walked into the yard and picked up a broom which he used to beat on the door and window. Appellant's son ran around to the front of the apartment and threw a stick at Mr. Harris, hitting him in the chest. Mr. Harris scared the child off and proceeded to walk across the yard away from the house. At this point, the appellant unlocked the door, came out and advanced on Mr. Harris with a knife in her hand. Mr. Harris began backing away from her, swinging or waving the broom to try to ward her off. She finally got to him and began stabbing him. He grabbed her in a "bear hug." A neighbor sitting on the front porch watching this, said she heard the appellant say as she came out the front door, "I'm fixing to kill you." The appellant herself said that when she came out the door "I didn't stop . . . I just went up on him." She then stopped stabbing the deceased. The police drove up and a neighbor asked Harris why not go to the police, and he said that he was going to die anyway. He fell down across the sidewalk and was pronounced dead at the scene. There was no question as to who killed Harris; as to how he died, or as to what happened.
 I
Appellant contends that the court erred when it denied or refused a challenge for cause of Mr. Carlos Rabren. Mr. Rabren was the head of the Department of Forensic Sciences at Auburn. As such, he was senior to Dr. Thomas Gilchrist and Mr. William H. Landrum, a criminalist, both members of the department he headed, and both of whom were to testify in the trial. Mr. Rabren was not a member of the trial jury. Dr. Gilchrist, the forensic pathologist, testified the cause of death of Benny Harris, Jr., was a single deep stab wound to the right axilla, or the armpit, which cut or severed the axillary artery, resulting in death by bleeding. Gilchrist testified the blood sample of the victim showed an alcohol level of .38%. He further testified that the deceased had two shallow stab wounds and ten superficial incised wounds. He testified that an injury to the deceased's hand could possibly have been caused by glass.
Mr. Landrum, the criminalist, testified about the blood type found on the knife and the clothing of the appellant and he stated that it matched the group B blood of Benny Harris, Jr.
Mr. Rabren, when first asked if he would give any greater credence to the testimony of any of the employees of his department because of the fact that he was aware of their knowledge or expertise than he would someone else, answered, "It's possible." Later, however, he was asked: "Well, could you still, if you sat on the jury, would you still base your verdict, regardless of who you might know testifying, or who you might not know, would you still base your verdict solely on the evidence in the case?" He answered, "Yes, sir, I would. I'd do my best to do that."
The challenge for cause should fail in any event. We conclude first that the testimony of the people from the Dept. of Forensic Sciences was as to matters not contested in the case. It was never denied that the appellant approached the deceased and stabbed him with a knife, nor that the knife wound was the cause of death. There was no question that the deceased was extremely intoxicated. We conclude *Page 1303 
also that the answer of the prospective juror was sufficient to establish his impartiality. The appellant would have suffered no injury had Mr. Rabren served on the jury. She suffered none from his being retained as a venireman.
 II
Appellant next contends that reversible error was committed by the judge in denying a motion in limine directed to exclude evidence of prior altercations. This court has previously ruled that the denial of a motion in limine cannot in and of itself rise to the level of reversible error. Oliver v. State,440 So.2d 1180 (Ala.Cr.App. 1983). This is true because the material against which the objection has been made has not yet been heard by the jury and may never be heard by them. See 75 Am.Jur.2d Trial, Section 165 (1974), Annot. 63 A.L.R.3d 311, Section 5 (1975).
In the case at bar, it appeared that appellant had stabbed Benny Harris, Jr. in the heart in September of 1980; also a month before the killing, she had stabbed Benny Harris with a fondue fork. The appellant testified to several prior altercations. There were several other witnesses who testified to altercations without objection being made.
Such testimony is relevant on the issue of intention in a case such as this one. The question of intent presumably played a large part in the jury's decision to convict the appellant of manslaughter instead of murder. Certainly, the testimony was admissible and the court did not err in denying the motion in limine.
 III
Appellant contends that the court committed reversible error by denying the defense motion to dismiss the evidence. We have examined the transcript and conclude that the trial court acted properly in denying the motion to exclude the evidence. This was a murder trial and the trial judge at sentencing stated, as regards the sufficiency of the evidence:
 ". . . I also heard some two or three days of the evidence in the case, and I can't help consider the evidence that I heard there. To be quite frank with you, you should consider yourself very fortunate that you were not convicted of murder, because of my opinion the jury would have been justified in finding you guilty of murder, you would be facing a life sentence today. What I'm saying, is: your attorney has done you a very excellent job and you should feel very fortunate that you are not facing a life sentence here today." (R 462-3)
We find no error; this case is affirmed.
AFFIRMED.
All the Judges concur.