We granted the State's petition for the writ of certiorari in this case to determine if the Court of Criminal Appeals,587 So.2d 1010, erred in reversing Samuel Parks's conviction of rape in the first degree and remanding for a new trial. As a result of his conviction, Parks received a sentence of 15 years' imprisonment and was ordered to pay $150 to the Victims' Compensation Fund, along with court costs. We reverse the Court of Criminal Appeals' judgment and remand the case. *Page 1013 
In reversing Parks's conviction, the Court of Criminal Appeals relied upon Anonymous v. State, 507 So.2d 972
(Ala. 1987), in holding that Parks was prevented from establishing a good character defense because of the trial court's ruling that S.P.'s sister and other of Parks's victims would be allowed to testify to Parks's prior bad acts.
The facts of the case, as set out in the Court of Criminal Appeals' opinion, are as follows: The victim, S.P., lived at home with her parents and siblings. On the morning of January 17, 1987, Parks, who is S.P.'s father, got everyone but S.P. out of the house. Parks then approached S.P. and asked her if she was going to "give him some." When she refused, Parks threatened her by telling her that he would hurt her "Mama." S.P. and Parks then had sexual intercourse. A.P., Parks's grandson, testified that on the morning of January 17, 1987, Parks instructed him to clean out the car. A.P. did so. Upon entering the house after he had finished, he witnessed Parks lying on top of S.P., who was wearing a shirt but no pants. Parks jumped to pull up his overalls and asked A.P. "where in the hell [he] was going." A.P. ran out of the house and did not tell anyone what he had seen.
Parks argues that the trial court committed reversible error in ruling that, if he attempted to establish proof of a good reputation in the community via character witnesses, the court would allow the State to introduce evidence of alleged prior acts of sexual misconduct by him with S.P. and her sister.
At the close of the State's evidence, Parks made, in effect, a motion in limine concerning the prior acts before he presented any evidence in his defense. A discussion concerning the motion was held between defense counsel (Mr. Harrison), the prosecutor (Mr. Belser), and the trial judge:
 "MR. HARRISON: If we bring in witnesses who testify concerning Mr. Parks's general reputation in the community, are you then going to allow Mr. —
"THE COURT: It depends on —
 "MR. HARRISON: Are you going to allow him [to go] into the prior conviction?
 "THE COURT: That's questionable. You are talking about character testimony now. You are not talking about impeachment [of] the defendant. You are talking about people who are coming from the community and giving testimony about his good character. I don't know. I will have to think about that. Okay.
 "MR. HARRISON: We would like the prosecution — we would like some indication on how the court will rule on that.
 "THE COURT: I don't know. If you are asking me — what are you asking me?
 "MR. HARRISON: If we put on evidence of Mr. Parks's general reputation in the community —
"THE COURT: Yeah.
 "MR. HARRISON: Are you going to allow Mr. Belser to then put on evidence of the prior conviction?
 "THE COURT: I believe that would be proper. I believe that would be proper.
"MR. HARRISON: Your Honor, that —
"THE COURT: Wait a minute.
 "THE COURT: Okay. I am looking over [§] 25.01 in McElroy's [C. Gamble, McElroy's Alabama Evidence
(3d ed. 1977)
"MR. HARRISON: 25.01?
 "THE COURT: Yes. Take a quick glance. I will rule this way: If you put on character testimony about his general reputation for truth and veracity —
 "MR. HARRISON: We are not asking for truth and veracity.
"THE COURT: What are you putting it in for then?
 "MR. HARRISON: That his general reputation is good or bad in the community.
 "THE COURT: Then yes, I would allow the victim S.P. and others to go on the stand to refute that. Yeah.
 "MR. HARRISON: All right. I would also like to ask the court and call the court's attention to [Cups Coal Co. v. Tennessee River Pulp Paper Co.], 519 So.2d 932, a 1988 case, Your Honor. That refutes the vitercation — I believe that's the name of it. Refutes that and *Page 1014 
says an appeal suspends the judgment on the facts in this case.
 "THE COURT: I am not talking about the conviction. I am not talking about the conviction, per se. I am talking about other particular acts that they allege he has done to them. If you put his general reputation for chastity, unchastity, sexual — general reputation for what though? You can't say what is your —
"MR. BELSER: That he's just a good old guy.
 "THE COURT: I will let them do that. Not on the prior conviction, but this is predicated on the point that his reputation is good but it has to be good for something. So what are you saying, just a good reputation?
"MR. HARRISON: That he has a good reputation.
 "THE COURT: Then I will allow the girls to take the stand. Yes, I think that would be proper.
 "MR. HARRISON: Under this case, if we put the defendant on the stand to testify —
 "THE COURT: All right. He cannot cross-examine on the prior convictions.
"MR. BELSER: No?
 "THE COURT: No. Not as long as that case is on appeal, you cannot. I know that. All right. As far as general reputation or any type of reputation type of questions, I will allow you to put the victim, S.P., and anybody else that is supposed to know something, to deal with that type of testimony, but if he takes the stand and testifies, as long as that case is on appeal, I will not let you use that case for impeachment."
(R. 131-35.)
In its opinion, the Court of Criminal Appeals stated:
 "In Anonymous v. State, 507 So.2d 972 (Ala. 1987), the Alabama Supreme Court addressed what prior acts may be introduced against the accused.
 " 'The general evidentiary principle, long adhered to in Alabama, which must be applied in this case may be stated as follows: In a prosecution for one offense, evidence of collateral crimes or acts is generally inadmissible to prove the guilt of the accused. See Ex parte Cofer, 440 So.2d 1121 (Ala. 1983); Ex parte Killough, 438 So.2d 333 (Ala. 1983); Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); Haley v. State, 63 Ala. 89 (1879); Ingram v. State, 39 Ala. 247 (1864). In fact, it has been stated that such evidence is prima facie inadmissible. See Cofer, supra; Brasher, supra; Allen v. State, 380 So.2d 313
(Ala.Crim.App. 1979), cert. denied, 380 So.2d 341 (Ala. 1980).
"As was explained in Cofer:
 " ' " 'This is a general exclusionary rule which prevents the introduction of [collateral] criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.
 " ' " 'This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of [collateral] crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of [collateral] crimes has almost an irreversible impact upon the minds of the jurors.' " '
 " ' "Cofer, 440 So.2d at 1123 (quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977). . . ." '
 Id. at 973-74, quoting Staten v. State, 547 So.2d 603, 605 (Ala.Cr.App. 1988)."
Then the Court of Criminal Appeals stated that, based upon the principles of Anonymous, Parks's conviction was due to be reversed. We disagree.
Parks presented the trial court with a hypothetical question: What would the trial court do if he, Parks, offered evidence of his good reputation in the community? Parks, however, never offered any character evidence. This hypothetical question was presented in the form of a motion in limine, and was denied by the trial court. As was stated by the Court of Criminal *Page 1015 
Appeals in White v. State, 527 So.2d 1349, 1350
(Ala.Crim.App. 1988):
 "The denial of a motion in limine can not in and of itself rise to the level of reversible error. 'This is true because the material against which the objection has been made has not yet been heard by the jury and may never be heard by them.' Brooks v. State, 443 So.2d 1301, 1303
(Ala.Crim.App. 1983)."
A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate reviewonly by objecting to the introduction of the proferred evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary. Liberty National Life Insurance Co. v. Beasley,466 So.2d 935, 936 (Ala. 1985). Parks failed to preserve for review the denial of his motion of limine, because the evidence of Parks's bad acts was never introduce. There was no reversible error on the part of the trial court; therefore, the judgment of the Court of Criminal Appeals is reversed and the case is remanded for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.