COBB, Judge,
dissenting.
On October 28, 2003, Maurice Cowan was convicted of the unlawful distribution of a controlled substance (crack cocaine), a violation of § 13A-12-211(a), Ala.Code 1975. On December 18, 2003, the trial court sentenced Cowan to serve 13 years in prison. The trial court also assessed a $1,000 fine pursuant to the Drug Demand Reduction Assessment Act and a $100 fine to be paid to the Alabama Forensic Sciences Trust Fund. On January 20, 2004, Cowan filed a motion for a new trial, which was deemed denied by operation of law on February 17, 2004. This appeal followed.
The facts adduced at trial indicate that, on December 7, 2001, during a controlled buy at a mobile home in Thomasville, Alabama, Cowan and Keith Kirksey[1] sold *879 eights rocks of crack cocaine to an undercover officer.
Cowan raises only one argument on appeal. He contends that the trial court erred in ruling that the State would have the opportunity to present testimony from a witness concerning an alleged bad act by Cowan if Cowan decided to take the stand. He argues that he should have been allowed to testify on his own behalf “without the fear that he would have to answer the assertion that he had committed jury tampering.” (Cowan’s brief, p. 13.) In its unpublished memorandum, the majority holds that Cowan did not preserve this argument by virtue of his “motions in li-mine.” I believe that Cowan did adequately preserve this argument for appellate review through several motions made to the trial court, as described in detail in this writing. Additionally, because I believe Cowan’s argument to be meritorious, I cannot simply concur in the result to affirm Cowan’s conviction and sentence. .
At the beginning of the second day of trial, before the State was to present the remainder of its case-in-chief, a controversy arose involving Cowan and one of the empaneled jurors. Cowan came forward and claimed that one of the jurors had contacted him after the court proceedings of the day before and asked him to meet her in Jackson, Alabama. Cowan, admitted to meeting with the juror. Before the trial proceedings began, the State and Cowan agreed to question the juror. The trial court put the juror on the stand. The juror testified that, when she left the courthouse the day before, she noticed someone following her. She pulled into the parking lot of the Wal-Mart discount store in Thomasville, and Cowan pulled in behind her. She stated that she had never met Cowan before and that Cowan’ was “trying to hit on [her,- asking whether she had] any kids or was ...' somebody he knew.” (E. 112.) The juror stated that Cowan tried to discuss the case with her, but that she refused to participate in the conversation. The juror stated that when she left Wal-Mart she went to the post office and that she again saw Cowan as she was leaving the post office. She stated that she drove home from the post office. The juror stated that she did not report the contact with Cowan because she “didn’t think nothing of it,” although at the time she was somewhat scared. (R. 114.) At the end of the proceedings, the trial court removed the juror and warned her that, in two days’ time, it would hold a contempt hearing to determine whether she or Cówan, or both, were to be held in contempt of court.
Upon the dismissal of the juror, the prosecutor stated, “Judge, I would like to issue a subpoena for her in this case, to testify in this case should the defendant testify.... I don’t want her leaving the courthouse.” (R. 120.) The trial court responded, “All right. That will be fine.” (R. 120.) The trial court then ordered the juror to stay in the courthouse and to remain segregated from the other jurors. The trial court and the two prosecutors discussed “the next step,” which involved questioning the remainder of the jury as to whether they had been contacted by'anyone about the case or whether they had spoken with the dismissed juror. (R. 121.) Trial counsel then stated as follows:
“I would at this time move for a mistrial. And the reason being, Judge, if my client gets on the stand and testifies and a rebuttal witness is [the dismissed juror], what we have done, Judge, there would be interjected a potential criminal case against my client that he has hot been charged with. And the fact she was a juror and was on that jury, I think is going to unduly influence them. And I feel like there is no way if she testifies that the jury will then be able to turn *880 around and render a fair and impartial verdict.”
(R. 121-22.) The trial court denied the motion, and the circuit court went in recess. After the court reconvened, trial counsel raised the following objection:
“Judge, based on the, the State’s conversation to the Court that [it plans] to call [the dismissed juror] as a rebuttal witness, Judge, at this time, I would move for a motion in limine precluding her from testifying. The only thing we’re here at trial for is whether or not my client sold drugs on December 7, 2001. And he is not on trial today about whether or not there was — he tampered with a witness or someone tampered with him. I either ask that motion in limine be granted, or in the alternative it be granted a mistrial.”
(R. 123.) The prosecutor responded:
“I would ask the Court [to] consider [Cowan’s] testimony on the stand if he testifies. She’s only going to be called in rebuttal to show bias on behalf of [Cowan], The Court has heard the gist of what her testimony is. The gist of her testimony is relevant to the jury to see whether or not [Cowan] is biased in his testimony or not. There can be but one interpretation what his meeting with her was about, that was to try to influence her, and in some way her opinion, and her decision as a juror in this case. And that shows bias.
“He is trying to create bias with this juror. If he would do that, it is proper for the jury, under [Charles] Gamble’s [.McElroy’s Alabama Evidence ] under the section, on the section on relevancy, to allow the jury to determine that. That is relevant conduct with regard to his bias. She will only be put on in case he testifies. If they want to put a different spin on it — I think he may know if somebody contacts a juror, it can be for only one reason. That’s proper for the jury to hear that.”
(R. 124.) Trial counsel then pointed out that “bias” had not been established in that there had not yet been a determination of whether Cowan approached the juror or the juror approached Cowan. The trial court denied the motion in limine. (R. 126.)
At the close of the State’s case-in-chief, trial counsel renewed his motion for a mistrial. In response, the prosecutor stated:
“In response to that, Judge[,] I know, Judge, you issued an order prior to any testimony about having a hearing at 1:30. At this time I would ask [that Cowan] be held in contempt and jailed until the jury is released from hearing this case. There is no guarantee [Co-wan] will not try to contact another juror at this time. I don’t think we can trust him. I think he needs to be held in custody at this time. And under the rules he can be held in contempt of court based on statements made inadvertently to the Court. I think it’s a serious thing, it ought to be done right now, it’s no testimony other than we have been contacted by a second person downstairs right now said he rode with him and is verifying what was done. His name is Lee something. He was up here, can come talk to the court. My people went to talk to him. He says he was with him.
[[Image here]]
“I am requesting this Court find him in contempt at least until the case is over with and him be incarcerated.”
(R. 160-61.) The trial court noted the upcoming hearing on the contempt question, denied the motion for a mistrial, and stated that, “[i]n the meantime [Cowan was] not to have contact with a juror or have anybody contact a juror on his behalf, or even be near a juror.” (R. 161.)
*881 Outside the presence of the jury, under oath, Cowan testified that, although the State planned to introduce evidence of his alleged jury tampering, he nonetheless wanted to take the stand and testify on his own behalf. The State then stated:
“We expect a witness [the dismissed juror] to testify they contacted a juror with regards — she felt the sole reason for him contacting her was to influence her vote, that would be to find him not guilty. The Rule says a party may attack the credibility of a witness by presenting evidence that a witness has bias or prejudice for or against a party on a case, or that the witness has an interest in the case. And if [Cowan] doesn’t have an interest in this case, I hadn’t ever tried one that has.
“The testimony is going to be he followed her, he met her in the Wal-Mart parking lot. The evidence is going to be that Lee Walker, [2] the other witness who testified, was with him. You have this witness and another person, a witness for him. It will show bias on both of their part. He said they never discussed it, Lee Walker said they never discussed the case. The case was discussed not only with Lee Walker, but in Lee Walker’s presence, with a juror. It’s admissible to show a prior inconsistent statement, now, with Lee Walker. We can put her on to say, just to impeach him.”
(R. 188-89.) Trial counsel responded:
“Judge, I feel like if they’re allowed to get into that the Court will commit a reversible error, in that they have allowed basically a crime that he has not been convicted of, much less charged on. The only thing that is before the Court is whether or not he is to be held in contempt. That’s the only thing before the Court. There has been no true bill by a grand jury, been no information filed by the district attorney’s office, nor has there been a warrant. He has not been convicted of it. They’re getting into something which he hasn’t been charged with any information that they get into. They’re trying to convict him of the jury tampering because the drug case is so weak. If the drug case is so strong, let’s go with the drug case. The State wants to convict my client of a drug case through this jury tampering.
“Judge, the prejudicial testimony greatly outweighs any probative value that that testimony is going to give. And [the dismissed juror] obviously now has an interest in the outcome of it because she has been placed under oath and obviously it’s in her best interest to say she had nothing to do with it, because she, herself, is facing possible contempt charges on Thursday. She is even facing possible criminal charges.”
(R. 189-90.) The trial court ruled as follows:
“For the Court to grant your motion in limine would be to allow [Cowan] to profit by his own misconduct in this case. Whether he — I know he had contact with this juror. Whether he initiated contact with this juror is really immaterial at this point because he did make contact with her, and he was under the Court’s order not to do so. Any conduct in this case may be relevant. Your motion is denied.”
(R. 191.) Trial counsel excepted to the ruling and stated:
*882 “Judge, I would like to also add that the juror had a duty to reveal this to the Court. She did not. It was revealed by me after being told by my client. So, basically, my client, wh[at] we’re saying, the Court is saying he would profit from his conduct, he is also causing himself a detriment by being honest and forthright to the Court.”
(R. 191.) After a brief recess, trial counsel addressed the court:
“Judge, after talking with my client again, I feel like it is a heartfelt decision, he does not want to testify. I have told him the pros and cons of either way, and he feels like it’s in his best interest he not testify....”
(R. 192.) The defense then rested. After he was adjudicated guilty of the unlawful distribution of crack cocaine, Cowan reiterated his arguments regarding his right to testify in his motion for a new trial.
Initially, I note that the majority and the State cite Davis v. State, 620 So.2d 136, 137 (Aia.Crim.App. 1993), for the proposition that Cowan has not preserved his argument for appellate review. In Davis, the appellant had filed a motion in limine to prevent the prosecution from mentioning two second-degree forgery convictions in the event he testified. Athough he received an adverse ruling to his motion, Davis did not object in any other way. This Court noted,
“[Djefense counsel never even alleged that the failure of the appellant to testify was based on the trial court’s denial of his motion in limine. ‘A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.’ Parks v. State, 587 So.2d 1012, 1015 (Ala.1991). Here, as in Parks, the appellant ‘failed to preserve for review the denial of his motion [in] limine, because the evidence of [the appellant’s prior convictions] was never introduced.’ Parks, 587 So.2d at 1015.”
Davis, 620 So.2d at 137.
First, unlike Davis, Cowan made it clear to the trial court that his failure to testify was based on the State’s clear intention to admit the evidence in question and on the trial court’s clear acquiescence to the admission. Cowan stated under oath that he planned to testify, even though the trial court had ruled that evidence of the alleged jury tampering would be admissible against him if he took the stand. In the face of this assertion, the State reiterated its intention of having the dismissed juror testify. The trial court ruled, again, that the evidence would be admissible. Trial counsel again objected. Ater a short recess, trial counsel stated that Cowan had changed his mind and that he would not testify. Therefore, unlike Davis, Cowan’s assertion that he would have testified had it not been for the trial court’s allowing evidence of the alleged jury tampering was more than hypothetical; it was as clear at trial as it is on appeal.
More importantly, Cowan not only moved for a motion in limine, he also twice moved for a mistrial, receiving adverse rulings each time. The holdings in Parks and Davis are necessitated by the appellant’s failure to complete the preservation of his argument presented in a motion in limine, not an argument presented in a motion for a mistrial or for a new trial. Unlike a motion in limine, a motion for mistrial and a motion for a new trial require no further objection beyond the initial adverse ruling.
Therefore, I believe that Cowan, unlike the appellants in Parks and Davis, pre *883 served for appellate review in his motions for a mistrial his argument that the State induced him not to testify on his own behalf.
Additionally, after a review of the relevant rules of evidence, I believe that Co-wan’s argument has merit and should have been addressed. Therefore, I cannot agree to affirm Cowan’s conviction and sentence.

. Keith Kirksey was a friend of Cowan and the cousin of the undercover officer; the record is unclear as to whether at the time of the trial Kirksey had been indicted for his involvement in the sale.

. Lee Walker testified that he had used drugs with the undercover officer on many occasions prior to the drug bust. On cross-examination, over trial counsel's objection, the trial court allowed the prosecutor to question Walker about whether he had been in the car with Cowan the night before and whether Cowan had discussed the case with anyone. The prosecutor claimed to be "laying a predicate for future testimony." (R. 173.)