**Brian Frederick LUCAS**

v.

**STATE of Alabama.**

CR–14–0744.

Court of Criminal Appeals of Alabama.

April 29, 2016.

William L. Pfeifer, Jr., Birmingham; and Richard Douglas Jensen, Huntsville, for appellant.

Luther Strange, atty. gen., and Stephen N. Dodd, asst. atty. gen. for appellee.

KELLUM, Judge.

The appellant, Brian Frederick Lucas, was convicted of attempted sodomy in the first degree, a violation of §§ 13A–4–2 and 13A–6–63(a)(1), Ala.Code 1975, and sexual abuse in the first degree, a violation of § 13A–6–66, Ala.Code 1975. The circuit court sentenced Lucas to 15 years' imprisonment for the attempted-sodomy conviction; that sentence was split, and he was ordered to serve 3 years' imprisonment followed by 3 years' supervised probation. The circuit court sentenced Lucas to 7 years' imprisonment for the sexual-abuse conviction; that sentence was also split, and he was ordered to serve 3 years' imprisonment followed by 3 years' supervised probation. The circuit court ordered that the sentences were to run concurrently. The circuit court further ordered Lucas to pay $1,000 in fines, $200 to the crime victims compensation fund, and court costs.

The evidence presented at trial established the following pertinent facts. S.B. has three daughters—A.B., K.B., and H.B. A.B., S.B.'s oldest daughter, married Lucas in 2007; they had one child, L.L., and later divorced. Lucas subsequently married a woman named Autumn. A.B. maintained primary physical custody of L.L. following her divorce from Lucas. L.L. stayed with S.B. several nights a week when A.B. worked third shift as a nurse at a Huntsville hospital. Lucas would sometimes visit L.L. while L.L. was spending the night at S.B.'s house.

On December 31, 2013, at approximately 3:30 a.m. S.B. received a telephone call from Lucas, who asked if he could come to S.B.'s house "to talk." S.B. testified that she believed Lucas was intoxicated when he telephoned her. S.B. told Lucas he could come to the house; Lucas arrived less than 10 minutes later. S.B. listened to Lucas talk about problems he was having with his second wife at the time. S.B. believed it was in Lucas's best interests not to drive home because he had been drinking, so she told Lucas that he could spend the night. Lucas got into bed, fully clothed, with his son, L.L., who was sleeping in S.B.'s bed. S.B. went to sleep in a guest bedroom.

H.B., who was 18 years old at the time of trial, testified that on the evening of December 30, 2013, she went to sleep in her bedroom around 10:30 p.m. H.B. testified that at approximately 6:00 a.m. on December 31, 2013, she "felt something agitating [her] face, rubbing it." (R. 173.) H.B. testified that she "could feel it the whole time" and that she felt it "around the base of [her] nose and [her] upper lip." (R. 173.) H.B. testified that she slowly started to wake up and saw an erect penis in her face and the silhouette of a man holding it. H.B. immediately pulled back and covered her mouth with her hands.

H.B. testified that it was dark in the room and that she could not see the man's face but could see that he was bald and that he was wearing pants that had been pulled down to the top of his thighs and a belt that had been undone. After staring at each other for a few moments in silence, H.B. saw the man pull up his pants, walk out of her room, and then heard him walk into S.B.'s bedroom. H.B. followed the man into S.B.'s bedroom, turned on the bedroom light, and saw that it was Lucas. H.B. then returned to her bedroom and locked the bedroom door.

Shortly thereafter, H.B. told S.B. what had happened and then both H.B. and S.B. told A.B. about the incident after A.B. arrived home from work. S.B. telephoned the Huntsville Police Department, who then took a statement from H.B. and transported H.B. to Crisis Services of North Alabama for an interview. H.B. then went to the Madison County Children's Advocacy Center for another interview. Lucas was subsequently arrested.

H.B. testified regarding two incidents that occurred with Lucas before December 2013. H.B. testified that when she was 13 or 14 years old, Lucas telephoned her at 2:00 a.m. when he was drunk and asked if he could come over. H.B. agreed and left the door unlocked for Lucas before returning to her bed. H.B. testified that when Lucas arrived he got in bed with her, put his arm around her and said " 'baby, you're so hot' about three times." (R. 184.) H.B. pushed Lucas's arm off of her and went to S.B.'s room to sleep. The second incident occurred when H.B. was 15 years old. H.B. testified that she went over to Lucas's parents' house to swim. After they swam for a couple of hours, Lucas and H.B. went inside and sat down in the living room, where Lucas searched for a pornography Web site on his computer. H.B. testified that Lucas "clicked on a

video of a girl and guy having anal sex and he said, wow, she's taking it like a champ. Most girls are like, oh, it hurts too bad. And then he closed.it." (R. 186.)

Chad Smith, an investigator with the Huntsville Police Department, interviewed Lucas on January 27, 2014. An audio recording of the interview was played for the jury at trial. In his statement to police, Lucas told Smith that in the early morning hours of December 31, 2013, he woke up to find water spilled on him in the bed he was sharing with L.L. Lucas went into H.B.'s bedroom and tried to wake her up to help him clean up the water. Lucas told Smith that he shook H.B. and pinched her nose but H.B. would not wake up. Lucas then returned to S.B.'s room where he had been sleeping with L.L. According to Lucas, shortly thereafter H.B. came into the room for a moment before leaving to return to her own bedroom.

M.C., who was 19 years old at the time of trial, testified that when she was 17 and 18 years old she babysat for Lucas's ex-wife Autumn's child. On February 2, 2014, M.C. turned 18 years old. M.C., who was with her boyfriend, telephoned Lucas on her birthday and asked Lucas to obtain "some alcohol" for them. M.C. and her boyfriend drove to Lucas's house to "hang out" and drink. (R. 306.) After drinking for a couple of hours, M.C. and her boyfriend fell asleep on Lucas's couch. M.C., who was lying on the outside of the couch next to her boyfriend, was awakened when she felt fingers down the back of her pants and in her rectum. M.C. testified that her pants were pulled down. M.C. testified that she did not know whose fingers they were at the time but at first thought that her boyfriend was touching her. M.C. tes-

tified that she got up off the couch and went to the bathroom. When she got up, M.C. saw Lucas kneeling beside the couch with his head on an ottoman that was pushed up against the couch. M.C. stated that her boyfriend was "knocked out" during this time. (R. 310.)

After she returned from the bathroom, M.C. lay back down on the couch and went back to sleep. M.C. testified that shortly thereafter she woke up again when she felt fingers inside her vagina. M.C.'s pants were pulled down below her knees. M.C. testified that she then realized that it was not her boyfriend touching her because his arm was underneath her. M.C. testified that she opened her eyes and saw Lucas kneeling over her. M.C. tried to pull away but Lucas would not stop touching her. M.C. testified that she pretended like she had to go to the bathroom again and Lucas stopped touching her. M.C. then woke her boyfriend up and they left Lucas's house.

After both sides rested and the circuit court instructed the jury on the applicable principles of law, the jury found Lucas guilty of attempted sodomy in the first degree and sexual abuse in the first degree. Lucas filed a timely motion for new trial, which the circuit court denied. This appeal followed.

I.

Lucas first contends that the circuit court erred in denying his motion for a judgment of acquittal on the charge of sexual abuse in the first degree because, he argues, the State failed to prove that he made contact with an intimate part of the alleged victim.[1] Specifically, Lucas contends that the nose and upper lip of the victim were not "intimate parts" because

1. The indictment charging Lucas with sexual abuse in the first degree stated, in pertinent part: "BRIAN FREDERICK LUCAS, whose name is unknown to the Grand Jury other

than as stated, did subject to sexual contact H.B., who was incapable of consent by reason of being physically helpless or mentally incapacitated...."

"they are not in close proximity to the primary sexual areas." (Lucas's brief, p. 46.)

"'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution."' *Ballenger v. State*, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting *Faircloth v. State*, 471 So.2d 485, 488 (Ala.Crim. App.1984), aff'd, 471 So.2d 493 (Ala. 1985). '"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' *Nunn v. State*, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting *O'Neal v. State*, 602 So.2d 462, 464 (Ala.Crim.App.1992). '"When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision."' *Farrior v. State*, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting *Ward v. State*, 557 So.2d 848, 850 (Ala.Crim.App.1990). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' *Ex parte Bankston*, 358 So.2d 1040, 1042 (Ala.1978).

"'The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. *Thomas v. State*, 363 So.2d 1020 (Ala.

Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. *Willis v. State*, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. *McConnell v. State*, 429 So.2d 662 (Ala.Cr.App.1983).'"

*Gavin v. State*, 891 So.2d 907, 974 (Ala. Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004)(quoting *Ward v. State*, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).

"A person commits the crime of sexual abuse in the first degree if [h]e subjects another person to sexual contact who is incapable of consent by reason of being physically helpless or mentally incapacitated." § 13A-6-66(a)(2), Ala.Code 1975. Section 13A-6-60(3), Ala.Code 1975, defines "sexual contact" as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."

■ Lucas contends that the State failed to prove that he subjected H.B. to sexual contact because he did not touch H.B.'s intimate parts. However, contrary to Lucas's contention on appeal, this Court has previously held that evidence that a defendant subjected a victim to the touching of his sexual or other intimate parts was sufficient evidence to show sexual contact.

In *D.L.R. v. State*, 188 So.3d 720 (Ala. Crim.App.2015), D.L.R. was convicted of sexual abuse of a child less than 12 years old. On appeal, D.L.R. argued that the

State presented insufficient evidence to support his conviction because, he said, there was no evidence indicating that he had subjected the victim to sexual contact. Specifically, D.L.R. argued that "there was not one instance when the child states that [D.L.R.] touched her sexual or other intimate areas." *D.L.R.,* 188 So.3d at 727. This Court rejected D.L.R.'s argument, stating:

"To convict D.L.R. of sexual abuse of a child less than 12 years old, the State was required to present evidence indicating that D.L.R. 'subject[ed]' K.R. to 'sexual contact.' See § 13A–6–69.1, Ala. Code 1975. Thus, the State was required to present evidence indicating that D.L.R. subjected K.R. to '[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party.' See § 13A–6–60(3), Ala.Code 1975. In the present case, the State did, in fact, present evidence indicating that D.L.R. subjected K.R. to the touching of the sexual or other intimate parts of a person. Specifically, D.L.R. subjected K.R. to the touching of his sexual or other intimate parts.

"The 'actor' in § 13A–6–60(3), Ala. Code 1975, is the person who committed the act of 'subject[ing]' under § 13A–6–69.1, Ala.Code 1975. However, contrary to the argument D.L.R. is apparently attempting to make, the person who committed the act of 'subject[ing]' under § 13A–6–69.1 does not have to be the person who 'touch[ed] the sexual or other intimate parts of a person' under § 13A–6–60(3). The defendant/actor has to be the person who 'subjects' the victim to 'sexual contact,' but nothing requires that the 'touching' be done by the defendant. Instead, '[a]ny touching of the sexual or other intimate parts of a person' will suffice so long as that touch-

ing is caused by the defendant and so long as the person touched is not married to the defendant. In other words, the actus reus is 'subjecting,' i.e., causing another person to submit to 'sexual contact,' and an element of 'sexual contact' is '[a]ny touching of the sexual or other intimate parts of a person....'

" . . . .

"In the present case, the State presented evidence indicating that D.L.R. put his penis in K.R.'s mouth and on her face and that D.L.R. put his 'butt' on K.R.'s face.... D.L.R.'s actions alone caused K.R. to touch his sexual or other intimate parts. In other words, D.L.R. 'subject[ed]' K.R. to the touching of his sexual or other intimate parts."

*D.L.R.,* 188 So.3d at 729.

Here, the State presented evidence indicating that Lucas touched H.B.'s nose and mouth with his erect penis while she was asleep and physically helpless to resist. H.B. testified that she was sleeping when she was awakened by the feel of something rubbing against her face—around the base of her nose and her upper lip. H.B. opened her eyes and saw an erect penis in her face and the silhouette of a man. H.B. followed the man out of her bedroom; she identified the man as Lucas. Given the evidence presented at trial and the standard by which this Court reviews that evidence, we conclude that sufficient evidence was presented from which the jury could find Lucas guilty of sexual abuse in the first degree. Accordingly, the circuit court did not err when it denied Lucas's motion for a judgment of acquittal on the charge of sexual abuse in the first degree.

## II.

Lucas also contends that the circuit court erred when it improperly instructed the jury that the nose and mouth were

intimate parts as a matter of law.[2] Specifically, Lucas contends that the circuit court's erroneous instruction invaded the province of the jury to determine if H.B.'s lips and mouth were "intimate parts" as the term is used in § 13A–6–60(3), Ala. Code 1975.

" 'A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case.' " *Edwards v. State,* 139 So.3d 827, 832 (Ala.Crim.App.2013)(quoting *Coon v. State,* 494 So.2d 184 (Ala.Crim.App.1986)).

At the conclusion of all the evidence, the circuit court gave the following instruction to the jury:

"Sexual contact means any touching of the sexual or other intimate parts of a person not married to the actor done for the purpose of gratifying the sexual desire of either party. I charge you that under the circumstances of this case, [H.B.'s] lips and mouth are intimate body parts."

(R. 519.)

In giving this instruction to the jury, the circuit court relied on this Court's decision in *Parker v. State,* 406 So.2d 1036 (Ala. Crim.App.1981). In *Parker,* this Court addressed, as a matter of first impression, whether a person's mid-thigh and stomach were "intimate parts" within the meaning of the sexual-abuse statute and whether that determination was one that should be made by the trial court as a matter of law or by the jury as a matter of fact:

"In our judgment, the determination of which areas are intimate is properly a question of law to be resolved by the trial court. Common use of the English language would indicate that the term 'intimate parts,' in the context of the statute, refers to any part of the body which a reasonable person would consider private with respect to touching by another.

"We believe that the thigh and the stomach are sufficiently intimate parts of the anatomy that a person of ordinary intelligence has fair notice that the nonconsensual touching of them is prohibited, particularly if the touching is accomplished in the manner revealed by the instant case. The statute is directed to protecting parts of the body in close proximity to the primary sexual areas which a reasonable person would deem private."

*Parker,* 406 So.2d at 1039.

Here, the evidence presented at trial established that Lucas rubbed his penis around the base of H.B.'s nose and on her upper lip while H.B. was asleep. As in *Parker,* the body part subjected to nonconsensual touching in this case was sufficiently intimate to put a person on notice that any nonconsensual touching was prohibited. Certainly, H.B.'s mouth was a sufficiently intimate part of the anatomy that Lucas had fair notice that putting his penis on H.B.'s mouth without her consent was prohibited. Given the particular facts and circumstances of this case, we cannot say that the circuit court erred when it instructed the jury that H.B.'s lips and mouth were intimate body parts as a matter of law. Therefore, we affirm Lucas's conviction for sexual abuse in the first degree.

---

**2.** Lucas does not challenge the circuit court's authority to determine if H.B.'s lips and mouth were intimate body parts as a matter of law. Indeed, the record indicates that defense counsel conceded the issue at the charge conference when he agreed that the circuit court had to decide as a matter of law whether or not H.B.'s mouth was an "intimate part."

### III.

■ Lucas also contends that the circuit court erred in denying his motion for a judgment of acquittal on the charge of attempted sodomy in the first degree because, he argues, the State failed to prove "forcible compulsion."[3]

"A person commits the crime of sodomy in the first degree if [h]e engages in deviate sexual intercourse with another person by forcible compulsion." § 13A–6–63(a)(1), Ala.Code 1975. A person commits the offense of attempted sodomy in the first degree if "with intent to commit [sodomy in the first degree], he does any overt act towards the commission of such offense." § 13A–4–2, Ala.Code 1975. Section 13A–6–60(8), Ala.Code 1975, defines "forcible compulsion" as "[p]hysical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person."

In this case, the State did not present evidence indicating that Lucas threatened H.B. Likewise, there was no evidence indicating that Lucas used physical force that overcame H.B.'s earnest resistance. Indeed, the State presented evidence that H.B. was asleep when she first felt Lucas's penis on her face. When H.B. awoke, she immediately pulled back and covered her mouth with her hands. Shortly thereafter, Lucas left H.B.'s bedroom without saying a word.

> "'Issues involving "'consent, force and intent to gratify the sexual desire of either [party]'" are generally questions for the trier of fact.' *C.M. v. State*, 889 So.2d 57, 63–64 (Ala.Crim.App.2004)

(quoting *Parrish v. State*, 494 So.2d 705, 709 (Ala.Crim.App.1985), quoting in turn *Hutcherson v. State*, 441 So.2d 1048, 1052 (Ala.Crim.App.1983)). See also *Kirby v. State*, 581 So.2d 1136, 1143 (Ala.Crim.App.1990)(whether forcible compulsion existed based on the facts is a jury question). However, as this Court recognized in *Lee v. State*, 586 So.2d 264, 266 (Ala.Crim.App.1991), '[t]he force required to consummate the crime ..., is relative'; different standards apply based on whether the victim is a child or an adult. '"Earnest resistance" is likewise a relative term, and when determining whether there was earnest resistance, the relative strength of the victim and the defendant, the victim's age, the victim's physical and mental condition, and the degree of force employed must be considered.' *C.M. v. State*, 889 So.2d at 64 (citing *Richards v. State*, 475 So.2d 893, 895 (Ala.Crim.App.1985))."

*McGlocklin v. State*, 910 So.2d 154, 157 (Ala.Crim.App.2005).

After carefully reviewing the evidence before us, we are forced to conclude that the State failed to present sufficient evidence of forcible compulsion. When the evidence is viewed in a light most favorable to the State, H.B., who was almost 16 years old at the time, was subjected to unwanted physical contact by Lucas while she was sleeping in her bedroom. Lucas never threatened H.B., and H.B. did not resist Lucas's actions until she woke up. Once H.B. woke up, pulled back, and covered her mouth, Lucas immediately pulled up his pants and left H.B.'s bedroom. Lucas did not speak to H.B. or touch her

---

**3.** The indictment of the Madison County grand jury charging Lucas read as follows: "BRIAN FREDERICK LUCAS, whose name is unknown to the Grand Jury other than as stated, did, with the intent to commit the crime of Sodomy 1st, Section 13A–6–63(a)(1) of the CODE OF ALABAMA, attempt to engage in deviate sexual intercourse with another person, to wit: H.B., by forcible compulsion...."

again. Lucas's actions, while reprehensible, did not subject H.B. to sexual contact by forcible compulsion because Lucas stopped touching H.B. when H.B. pulled back and covered her mouth. Thus, we have no choice but to conclude that the State failed to prove that Lucas subjected H.B. to sexual contact by forcible compulsion.

Because the State failed to present sufficient evidence showing that Lucas subjected H.B. to sexual contact by forcible compulsion, it failed to establish a prima facie case of attempted sodomy in the first degree, and the circuit court erred in denying Lucas's motion for a judgment of acquittal as to that charge. However, the circuit court instructed the jury on the lesser-included offense of attempted sexual misconduct, and, although the State presented insufficient evidence to support a conviction for attempted sodomy in the first degree, the State presented sufficient evidence to support a conviction for attempted sexual misconduct. Therefore, we remand this case for the circuit court to enter a judgment finding Lucas guilty of the lesser-included offense of attempted sexual misconduct and to resentence Lucas accordingly. See *Cockrell v. State*, 890 So.2d 168 (Ala.Crim.App.2003), aff'd, 890 So.2d 174 (Ala.2004).

### IV.

■ Lucas next contends that the jury returned mutually exclusive verdicts when it found him guilty both of attempting to forcibly sodomize H.B. and of sexual abuse in the first degree for acts committed while H.B. was helpless or mentally incapacitated. Lucas contends that "forcible

compulsion" for purposes of attempted first-degree sodomy and "mental incapacity" for purposes of first-degree sexual abuse are mutually exclusive elements that, in light of the fact that they involved a single event, resulted in "charges [that] on their face [were] not only inconsistent but [were] mutually exclusive." (Lucas's brief, p. 57.)

Lucas raises this issue for the first time on appeal. The record indicates that Lucas did not raise this issue after the verdicts were returned or in his motion for a new trial. Therefore, Lucas failed to preserve this claim for appellate review. See *Perry v. State*, 568 So.2d 873, 875 (Ala. Crim.App.1990); *Grikis v. State*, 552 So.2d 187 (Ala.Crim.App.1989).[4]

### V.

■ Lucas next contends that the circuit court erred when it admitted into evidence Lucas's statement to police over his objection because, he argues, the State failed to lay the proper predicate for the admission of the statement. Specifically, Lucas contends that the State "did not establish that [Lucas's statement to police] was knowing or voluntary and did not provide any evidence of what specific *Miranda*[5] warnings were given to [ ] Lucas." (Lucas's brief, p. 59.)

The record indicates that Lucas filed a motion to suppress his statement to police in which he argued, among other things, that his statement was made in violation of his constitutional right against self-incrimination. However, at a pretrial hearing, defense counsel withdrew the motion to suppress. During trial, the prosecutor

---

4. In his brief on appeal, Lucas does not argue that his convictions violated the prohibition against double jeopardy, implicating the jurisdiction of the trial court, and we find no double-jeopardy violation that is jurisdictional

in the instant case. Compare *Heard v. State*, 999 So.2d 992 (Ala.2007).

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

questioned Smith about Lucas's statement to police and the following exchange occurred:

"[Prosecutor]: And when you met with him at the jail, did you read him his *Miranda* warnings?

"A. Yes, sir.

"Q. And did he agree to speak with you after you read him his *Miranda* warnings?

"A. Yes, sir.

"Q. And did you make any kind of record of that interview, Investigator Smith?

"A. Audio recording.

"Q. Audio recording?

"A. Yes, sir.

"Q. Okay. I have what the State is going to mark as Exhibit Number 2 available to be played. Let me ask you this. You've heard that video recording; is that correct?

"A. The audio recording, yes, sir.

"Q. Audio recording. Does it fairly and accurately depict the interview and conversation you had with Brian Lucas on that day?

"A. Yes, sir.

"[Prosecutor]: At this time, Your Honor, I would ask that we be able to publish the interview to the jury.

"[Defense Counsel]: Your Honor, I object. I don't think he's laid the proper predicate at this point.

"THE COURT: Overruled. Go ahead."

(R. 291–92.)

Although the record indicates that Lucas objected to the admission of the audio recording of his statement based on the State's failure to lay the proper predicate, there is no indication in the record that Lucas objected to the admission of his statement based on the specific argument he now makes on appeal, namely, that the State did not establish that the *Miranda* warning was properly given and that Lucas's statement to police was made knowingly and voluntarily. Further, Lucas withdrew a motion to suppress he filed before trial in which he challenged the admission of his statement based on alleged deficiencies in the *Miranda* warnings given by police.

■■■ " 'Review on appeal is restricted to questions and issues properly and timely raised at trial.' " *Ex parte Coulliette,* 857 So.2d 793, 794 (Ala.2003)(quoting *Newsome v. State,* 570 So.2d 703, 717 (Ala. Crim.App.1989)). It is well settled that " '[a]n issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.' " *Dickey v. State,* 901 So.2d 750, 756 (Ala.Crim.App.2004)(quoting *Pate v. State,* 601 So.2d 210, 213 (Ala. Crim.App.1992)). "[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof." *McKinney v. State,* 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). Furthermore, "[i]t is incumbent upon counsel to obtain an adverse ruling to preserve an issue for appellate review." *Pettibone v. State,* 91 So.3d 94, 114 (Ala. Crim.App.2011). Because Lucas withdrew his objection on this particular claim before trial without receiving an adverse ruling and because Lucas did not raise this specific objection at trial, the claim is not preserved for appellate review.

## VI.

Finally, Lucas contends that the circuit court erred when it admitted collateral-act evidence at trial in violation of Rule 404(b), Ala. R. Evid. Specifically, Lucas contends that the circuit court erred in admitting evidence of inappropriate contact between

H.B. and Lucas initiated by Lucas before December 31, 2013, and further, that the circuit court erred in admitting evidence of inappropriate contact between M.C. and Lucas initiated after December 31, 2013. Lucas contends that the "evidence of collateral acts ... was admitted into evidence solely to show that he has a bad character, not out of any genuine issue of whether he had a 'motive' to be attracted to teenagers over the age of legal consent" and that "[s]uch evidence was impermissible" and "severely prejudicial." (Lucas's brief, p. 67.)

"The admission or exclusion of evidence is a matter within the sound discretion of the trial court." *Taylor v. State,* 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). "The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." *Ex parte Loggins,* 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-act evidence. See *Davis v. State,* 740 So.2d 1115, 1130 (Ala. Crim.App.1998); see also *Irvin v. State,* 940 So.2d 331, 344–46 (Ala.Crim.App.2005).

■ Generally, "[e]vidence of any offense other than that specifically charged is prima facie inadmissible." *Bush v. State,* 695 So.2d 70, 85 (Ala.Crim.App.1995)(citing *Nicks v. State,* 521 So.2d 1018 (Ala.Crim.App.1987)). However, the exclusionary rule operates to exclude only evidence of other crimes that is offered as proof of the defendant's bad character. See *Tyson v. State,* 784 So.2d 328, 346 (Ala.Crim.App.), aff'd, 784 So.2d 357 (Ala.2000). Specifically, Rule 404(b), Ala. R. Evid., provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ In *Irvin v. State,* 940 So.2d 331 (Ala.Crim.App.2005), this Court explained:

"In *Robinson v. State,* 528 So.2d 343 (Ala.Crim.App.1986), this Court discussed the purpose of the exclusionary rule, stating:

"' " ' 'On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.' " *Pope v. State,* 365 So.2d 369, 371 (Ala. Crim.App.1978), quoting C. Gamble, *McElroy's Alabama Evidence* 69.01 (3d ed.1977). " 'This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.' " *Ex parte Arthur,* 472 So.2d 665, 668 (Ala.1985), quoting *McElroy's* supra, 69.01(1). Thus, the exclusionary rule serves to protect the defendant's right to a fair trial. " 'The jury's determination of

guilt or innocence should be based on evidence relevant to the crime charged.'" *Ex parte Cofer,* 440 So.2d 1121, 1123 (Ala.1983); *Terrell v. State,* 397 So.2d 232, 234 (Ala.Cr.App.1981), cert. denied, 397 So.2d 235 (Ala.1981); *United States v. Turquitt,* 557 F.2d 464, 468 (5th Cir.1977).

"'"If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible." *Saffold v. State,* 494 So.2d 164 (Ala.Crim.App.1986). The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. *Willis v. State,* 449 So.2d 1258, 1260 (Ala.Crim.App.1984); *Scott v. State,* 353 So.2d 36 (Ala.Crim.App.1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. "'Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.'" *Aver-*

*ette v. State,* 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting *United States v. Turquitt,* supra at 468–69. "'"Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.' [Citation omitted.] 'Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."'" *Averette v. State,* supra at 1374.'

"528 So.2d at 347. See also *Hocker v. State,* 840 So.2d 197, 213–14 (Ala.Crim. App.2002)."

940 So.2d at 345–46. "A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger of unfair prejudice." See *Ex parte Register,* 680 So.2d 225 (Ala.1994).

### A.

Lucas first challenges the admission of H.B.'s testimony regarding incidents that occurred before December 31, 2013. The State contends that Lucas's challenge to this testimony is not preserved for review on appeal. We agree.

"'The general rule is that an adverse ruling on a motion in limine does not preserve the issue for appellate review unless an objection is made at the time the evidence is introduced.' *Moody v. State,* 888 So.2d 532, 582 (Ala.Crim.App. 2003). '[U]nless the trial court's ruling on the motion in limine is absolute or unconditional, the ruling does not pre-

serve the issue for appeal.' *Perry v. Brakefield,* 534 So.2d 602, 606 (Ala. 1988)."

*Saunders v. State,* 10 So.3d 53, 87 (Ala. Crim.App.2007). See also *Parks v. State,* 587 So.2d 1012, 1015 (Ala.1991)(holding where a party seeking the exclusion of the evidence suffers an adverse ruling on its motion in limine, that party can preserve the ruling for appellate review "only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary").

The record indicates that the only objection raised by Lucas to the admission of H.B.'s testimony regarding collateral acts at trial occurred before trial during a hearing on the State's motion in limine to submit evidence under Rule 404(b). Lucas did not obtain express acquiescence from the trial judge that a subsequent objection was unnecessary at the time the court ruled on the motion in limine. Because Lucas did not object to the admission of H.B.'s testimony regarding collateral acts at the time it was proffered at trial, his challenge to the admission of that same evidence on appeal is not preserved for review and is deemed waived. *Parks,* supra.

 In any event, even if Lucas had properly preserved this issue on appeal he would not be entitled to relief. In the instant case, the State offered the collateral-acts evidence to show motive. In *Bedsole v. State,* 974 So.2d 1034 (Ala.Crim. App.2006), this Court addressed the use of collateral acts to prove motive:

"In addressing the admissibility of collateral acts of sexual abuse in the trial of a defendant charged with rape and sexu-al abuse, this Court in *Estes v. State,* 776 So.2d 206 (Ala.Crim.App.1999), stated:

"'Ordinarily, a prior act of sexual abuse would be inadmissible under Rule 404(b). However, in this case, the alleged prior bad act was offered for the specific purpose of proving motive.

"'"'Motive is defined as "an inducement, or that which leads or tempts the mind to do or commit the crime charged." *Spicer v. State,* 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has been described as "that state of mind which works to 'supply the reason that nudges the will and prods the mind to indulge the criminal intent.'" [Charles Gamble, *Character Evidence: A Comprehensive Approach* 42 (1987).]

"'"'Furthermore, testimony offered for the purpose of showing motive is *always admissible. McClendon v. State,* 243 Ala. 218, 8 So.2d 883 (1942). Accord, *Donahoo v. State,* 505 So.2d 1067 (Ala.Cr. App.1986). "'It is permissible in *every criminal case* to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.' *McAdory v. State,* 62 Ala. 154 [ (1878) ]." 1039 *Nickerson v. State,* 205 Ala. 684, 685, 88 So. 905, 907 (1921).'"

"'*Hatcher v. State,* 646 So.2d 676, 679 (Ala.1994)(emphasis added).

"'In determining whether evidence concerning a collateral act of sexual abuse is admissible to prove motive, we must consider the following factors: "'(1) the offense(s) charged; (2) the circumstances surrounding the offense(s) charged and the collateral offense(s); (3) the other collateral evidence offered at trial; and (4) the other purpose(s) for which it is of-

fered.'" *Campbell v. State,* 718 So.2d 123, 130 (Ala.Cr.App.1997), quoting *Bowden v. State,* 538 So.2d 1226, 1237 (Ala.1988).'"

974 So.2d at 1038–39.

In this case, H.B.'s testimony regarding the two incidents that occurred before December 2013 was relevant to show that Lucas was sexually attracted to H.B. in her teenage years. H.B. testified that when she was 13 or 14 years old Lucas got in bed with her, put her arm around her, and told her she was "so hot." Approximately one year later, Lucas asked H.B. to join him while he watched a pornographic video of a woman and man engaged in anal sex. Both incidents established a pattern of behavior toward H.B. that was relevant to establishing Lucas's motive when he entered H.B.'s bedroom in December 2013. Therefore, we cannot say that the circuit court abused its discretion in admitting H.B.'s testimony regarding the incidents that occurred before December 31, 2013.

### B.

▆▆▆ Lucas also challenges the admission of M.C.'s testimony regarding instances of inappropriate contact with her initiated by Lucas after December 31, 2013. Like H.B.'s testimony, the State offered M.C.'s testimony about Lucas's inappropriate contact to show motive.

The record indicates that the circumstances surrounding Lucas's sexual abuse of M.C. were similar to the misconduct against H.B. with which Lucas was charged. M.C., like H.B., was a teenager when Lucas sexually abused her. Lucas had been drinking alcohol and was drunk when both incidents of abuse took place. Further, both M.C. and H.B. were asleep when Lucas perpetrated the act of sexual abuse.

M.C.'s testimony was necessary to substantiate H.B.'s testimony and helped establish that Lucas's motive for touching H.B. was his sexual desire for teenage girls. See *Garner v. State,* 977 So.2d 533, 537 (Ala.Crim.App.2007)(holding that testimony regarding appellant's prior sexual abuse was relevant to show his "unnatural sexual desire for young girls"). Therefore, the circuit court correctly allowed M.C. to testify concerning collateral acts of sexual abuse committed by Lucas.

Based on the foregoing, we affirm Lucas's conviction for sexual abuse in the first degree. However, we reverse Lucas's conviction for attempted sodomy in the first degree and remand this case to the circuit court for it to enter a judgment finding Lucas guilty of attempted sexual misconduct and to resentence Lucas accordingly.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.